Norman SLATTERY, Plaintiff–Appellee,

v.

Christopher RIZZO, Defendant–Appellant.

No. 91–6271.

United States Court of Appeals, Fourth Circuit.

Argued June 5, 1991.

Decided July 25, 1991.

214

Eva Dillard McSlarrow, Asst. Co. Atty., argued (David T. Stitt, Co. Atty., Robert Lyndon Howell, Deputy Co. Atty., on brief), Fairfax, Va., for defendant-appellant.

Blair Duncan Howard, argued (John F. Leino, on brief), Howard, Leino & Howard, P.C., Alexandria, Va., for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and WILKINS, Circuit Judges.

## OPINION

POWELL, Associate Justice:

This is an appeal from an interlocutory order of the United States District Court for the Eastern District of Virginia denying a police officer qualified immunity in an excessive use of force claim filed under 42 U.S.C. § 1983. The critical issue presented in this case is whether under the undisputed facts a reasonable police officer could have had probable cause to believe that the appellee posed an immediate and deadly threat. We believe that under these facts such probable cause could have existed. We therefore reverse the decision below, and remand for the district court to enter summary judgment for the appellant on the basis of qualified immunity.

### I.

Appellant Christopher Rizzo is a police officer in Fairfax County, Virginia, assigned to the Narcotics Enforcement Team (NET). On March 23, 1990, Rizzo and several members of the NET conducted a "sting" operation in the parking lot of the Bull Run Grill (the Grill) located in Centerville, Virginia.[1] The Grill's parking lot had the reputation of being an open-air drug market and there had been past incidents involving weapons and violence at that location. The NET had conducted law enforcement operations on the premises prior to March 23, 1990. In the two operations immediately preceding that of March 23, members of the NET had recovered guns from individuals arrested or had recovered them from the area where they were arrested. Rizzo had participated in both of these operations. There had been another operation planned to take place subsequent to these two and prior to March 23, but it was canceled after several people were shot in a "drive-by" shooting at the grill which occurred several minutes prior to the arrival of NET personnel.

On the night of March 23, 1990, Officer Rizzo's role in the operation was to wait in a van for an arrest signal, then drive it into the parking lot and block the escape route of any suspect's car. He was then instructed to secure that car and anyone inside it. Rizzo wore a black uniform that evening which was covered by a black bullet-proof vest with "Police" written on it in large white letters. He also wore a fluorescent arm-band with "Police" written on it and wore a mask over his face with the same written across the forehead.[2] Rizzo's police badge was in full view, clipped to the outside of his belt.

The NET made four or five arrests that night before the car carrying the appellee

---

1. In this operation, also known as a "reversal" operation, one police officer posing as a narcotics dealer would sell a fake substance that was supposed to be crack cocaine. Joint Appendix at 41. After the purchase, that officer would signal the other officers in hiding, who would then arrest the purchaser and secure the area.

The arrestee would be charged with attempting to possess cocaine. *Ibid.*

2. The officer wore a face mask to preserve and protect his identity because his duties often required him to purchase drugs in open-air markets.

Norman Slattery arrived. Slattery was the passenger in a white car that pulled into the parking lot about the same time as a Ford truck. The drivers of both vehicles parked, and then approached the officer posing as the narcotics dealer. Slattery, however, remained in the front passenger seat of the car.

When the arrest signal was given, several officers came out of hiding and moved in to arrest the two drivers. Rizzo drove the van into the lot and blocked the car containing Slattery. He then got out of the van and approached Slattery, who remained seated in the car. Rizzo shined a flashlight through the window of the car's front passenger door, but he could not see Slattery's hands. Rizzo identified himself as a police officer, and ordered Slattery to raise his hands. He gave this command at least twice. When Slattery failed to respond, Rizzo kicked the car door window. Slattery then turned his head slowly and looked at Rizzo. The officer opened the car door, and yelled "police officer ... get your hands up now." Joint Appendix at 43, 97.

By this time Officer Rizzo had drawn his service revolver. He could not see Slattery's left hand clearly. This was the hand away from the officer. Rizzo was, however, able to see that the hand appeared to be partially closed around an object. Slattery turned his head slowly towards Rizzo and turned away. Rizzo again ordered Slattery to put up his hands. Slattery turned his entire upper body towards the officer, who could still not see Slattery's left hand. Rizzo then believing that Slattery was coming at him with a weapon, shot him once in the face with his revolver. The object in Slattery's hand was later determined to be a beer bottle.

Another NET member, Officer Turner had witnessed most of the events leading up to the shooting. He approached the scene upon hearing Officer Rizzo's shouts. Turner saw Slattery look at Officer Rizzo,

and noted that he did not put his hands up. Turner drew his revolver because he thought the appellee was "up to something." J.A. at 203. Turner was about thirty feet from the car and he could see Slattery only from the biceps area up. He saw Slattery bend down and Turner believed that Slattery was reaching for a weapon. He then saw Slattery turn towards Rizzo again and heard a shot.

Slattery brought this action under 42 U.S.C. § 1983 alleging Officer Rizzo had deprived him of his constitutional rights as protected by the fourth, fifth, and fourteenth amendments. He also asserted state law claims of assault, battery, false imprisonment, and intentional and negligent infliction of emotional distress. After discovery, Rizzo moved for summary judgment on grounds of qualified immunity. The district court denied the motion as it applied to Slattery's excessive use of force claim, but dismissed the other claims. Rizzo now appeals the order refusing to grant him qualified immunity.

## II.

■ Officer Rizzo first argues that a claim of qualified immunity is available to a law enforcement officer in a claim of excessive force. Mr. Slattery does not contest this argument. The district court, however, appears to have held that qualified immunity is not available in such claims.[3]

There is no principled reason not to allow a defense of qualified immunity in an excessive use of force claim, when it is allowed in other actions alleging violations of the fourth amendment. The interests served by the principle of qualified immunity are present in all suits alleging violations of the fourth amendment. *See Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Although the Court of Appeals for the Sixth Circuit has indicated that qualified immunity is not available in excessive use of force claims, all other courts of appeals

---

**3.** The district court denied appellant's motion for summary judgment in a one-page order issued December 21, 1990. No written opinion was issued. At the hearing, however, the court

noted that it believed that qualified immunity could not be applied in a claim of excessive use of force, see J.A. at 23–27.

that have addressed this issue directly have held that qualified immunity is available in such cases.[4] *See Thorsted v. Kelly,* 858 F.2d 571 (9th Cir.1988); *Brown v. Glossip,* 878 F.2d 871 (5th Cir.1989); *Finnegan v. Fountain,* 915 F.2d 817 (2d Cir.1990). We agree with the majority of these courts and hold that qualified immunity can be applied in claims alleging excessive use of force in violation of the fourth amendment.

### III.

■ We must now determine whether qualified immunity should have been granted to Officer Rizzo under the undisputed facts in this case summarized above. Government officials performing discretionary functions are shielded from civil liability to the extent their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects all such officials unless the law clearly prohibited the action taken. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

■ At the time this incident occurred, the Supreme Court had held that the fourth amendment limited a police officer's use of deadly force to those situations, among others, where he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 1701, 85 L.Ed.2d 1 (1985). This is the general right that the appellant was alleged to have abused. For the purpose of determining whether a defendant is entitled to qualified immunity the plaintiff's rights must be clearly established under the particular circumstances confronting the official at the time of the questioned action. *See Anderson v. Creighton,* 483

U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The right of the plaintiff must be established so clearly that a reasonable official would know what he is doing violates that right. *Ibid.* Where there is a legitimate question as to whether the officer's conduct would objectively violate the plaintiff's right, qualified immunity "gives police officers the necessary latitude to pursue their [duties] without having to anticipate, on the pain of civil liability, future refinements or clarifications of constitutional law." *Tarantino v. Baker,* 825 F.2d 772 (4th Cir.1987).

■ The appellee argues that the primary question in determining the issue of qualified immunity is whether Rizzo in the eyes of a reasonable policeman acted reasonably in shooting Slattery, and that such an issue is best resolved by a jury. That issue reaches the merits of the case, but qualified immunity affords government officials greater protection than a simple defense on the merits. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. Furthermore, the purpose of qualified immunity is to remove most civil liability actions, except those where the official clearly broke the law, from the legal process well in advance of the submission of facts to a jury. *Ibid.* A police officer should prevail on an assertion of qualified immunity if a reasonable officer possessing the same information *could* have believed that his conduct was lawful. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039. If a reasonable officer could have found probable cause to believe that Slattery presented a serious threat of personal harm at the time that Rizzo pulled the trigger, then as a matter of law, the appellant is entitled to qualified immunity.

■ We believe that under the undisputed facts of this case, a reasonable officer could have had probable cause to believe that the appellee posed a deadly threat and

---

4. Other courts of appeals have affirmed grants of qualified immunity in excessive use of force claims without addressing the issue. *See e.g. Fitzgerald v. Patrick,* 927 F.2d 1037 (8th Cir. 1991); *Zuchel v. Spinharney,* 890 F.2d 273 (10th Cir.1989). *Clark v. Evans,* 840 F.2d 876 (11th Cir.1988). The Supreme Court of the United States recently reserved judgment on this issue in a case involving excessive use of force by a police officer where qualified immunity was not raised. *See Graham v. Connor,* 490 U.S. 386, 399 n. 12, 109 S.Ct. 1865, 1873 n. 12, 104 L.Ed.2d 443 (1989).

therefore would be authorized to use deadly force. Therefore, we hold that Officer Rizzo was entitled to qualified immunity. We reverse the order of the district court and remand the case for entry of an order consistent with this decision.

REVERSED AND REMANDED.