**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARK RANDOLPH BRASWELL,
Individually and on behalf of and as
administrator of the Estate of
Newsome Earl Braswell; and State of
North Carolina ex rel Mark Randolph
Braswell as administrator of the Estate
of Newsome Earl Braswell,
<u>Plaintiffs-Appellees,</u>

and

MOLLY BRASWELL,
<u>Plaintiff,</u>

v.

JERRY AMOS WIGGS, Individually and in

his official capacity as Deputy Sheriff
of Edgecombe County; ROBERT
CHRISTOPHER DAVIS, Individually and in
his official capacity as a Deputy
Sheriff of Edgecombe County;
WESTERN SURETY COMPANY,
<u>Defendants-Appellants,</u>

and

PHILLIP HENRY ELLIS, Individually and
in his official capacity as Sheriff of
Edgecombe County; EDGECOMBE
COUNTY,
<u>Defendants.</u>

No. 95-2572

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Franklin T. Dupree, Jr., Senior District Judge.
(CA-94-325-5-D3)

Argued: January 27, 1998

Decided: March 5, 1998

Before RUSSELL,* WIDENER, and WILKINS, Circuit Judges.

_____

Reversed by unpublished opinion. Judge Wilkins wrote the opinion, in which Judge Widener joined.

_____

**COUNSEL**

**ARGUED:** Mark Allen Davis, WOMBLE, CARLYLE, SAN-DRIDGE & RICE, Raleigh, North Carolina, for Appellants. Martha Anne Geer, PATTERSON, HARKAVY & LAWRENCE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Robert H. Sasser, III, WOMBLE, CARLYLE, SANDRIDGE & RICE, Raleigh, North Carolina, for Appellants. Melinda Lawrence, PATTERSON, HARKAVY & LAWRENCE, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Mark Randolph Braswell, individually and as administrator of the estate of Newsome Earl Braswell (Braswell), and Molly Braswell,

_____

*Judge Russell heard oral argument in this case but died prior to the time the decision was filed. The decision is filed by a quorum of the panel. 28 U.S.C. § 46(d).

2

Braswell's mother,**1** brought this action pursuant to 42 U.S.C.A. § 1983 (West 1994), claiming, <u>inter alia</u>, that Braswell was deprived of his Fourth Amendment right to be free from unreasonable seizures by Edgecombe County, North Carolina, Sheriff's Department Officers Robert Christopher Davis and Jerry Amos Wiggs. These officers appeal a ruling of the district court that they were not entitled to summary judgment on the basis of qualified immunity. We reverse.

I.

On May 7, 1991, when the events underlying this action took place, Braswell was 46 years old and had been diagnosed as a schizophrenic approximately 15 years earlier. Braswell's niece, Linda Woodcock, filed an "Affidavit and Petition for Involuntary Commitment" to obtain the assistance of law enforcement in transporting Braswell to receive necessary medication that he was refusing. J.A. 225. The affidavit submitted by Woodcock in support of her request explained that Braswell had been under mental-health care for an extended period, was refusing to take medication prescribed for his condition, and had begun behaving erratically. In addition, the affidavit stated that Braswell had "gone beserk [sic] and become violent by pushing his sister down." <u>Id.</u> This affidavit led a state magistrate to find that Braswell was "mentally ill and in need of treatment" and to issue an order directing that he be taken into custody. J.A. 226.

Later that day, Officers Davis and Wiggs proceeded to the rural street on which Braswell and members of his family resided. As Officer Davis spoke to Woodcock, they observed Braswell run across the street into an adjacent wooded area. Although Woodcock and the officers pursued Braswell, they lost sight of him. After approaching another house on the road--which officers later learned belonged to Braswell's brother--Woodcock entered the house with the officers following behind her. The house was tiny, dark, and filthy--garbage, food, clothing, and household goods were strewn about haphazardly. The windows were partially obstructed by smoke and plastic bags, and there were no lights on in the house, hindering visibility to some degree.

_____

**1** For ease of reference we refer to this action as having been prosecuted by "the Estate".

3

Braswell was observed sitting in a chair in the living room. Woodcock knelt beside him and attempted to convince him to accompany the officers to receive his medication, but Braswell refused. After several minutes had passed and it became apparent that Braswell did not intend to accompany the officers voluntarily, both officers removed their eyeglasses and placed them in their pockets so that they would not be injured by broken glass if they had to employ physical force to take Braswell into custody. Braswell suddenly stood up from the chair, looking at the officers and saying something to the effect of, "You son-of-a-bitches have come here to kill me" or "You son of a bitch, you've got me to kill." J.A. 67, 496 (internal quotation marks omitted). As Braswell rose, Woodcock also stood, turned from the room, and left the house; she did not see anything that transpired afterward.

According to the officers, Braswell began to move toward them, swinging his right arm violently. The officers uniformly testified that they believed that Braswell was swinging a knife at them. The officers began to back up and move away from Braswell as far as they could in the very cramped quarters of the house. In a matter of a few seconds, Officer Davis was backed up against the kitchen wall with Braswell only a few feet from him. Both officers unholstered their firearms, and Officer Davis fired two rounds at Braswell. Braswell paused momentarily, his right arm in the air. When Officer Davis perceived that Braswell was once again moving toward him, he fired an additional three rounds, striking Braswell twice more. Braswell fell to the floor and died as a result of one of these final shots.

The Estate subsequently brought this § 1983 action claiming that Officers Wiggs and Davis deprived Braswell of his Fourth Amendment right to avoid unreasonable seizures. The district court denied the officers' motion for summary judgment, holding that genuine issues of material fact existed that foreclosed the grant of summary judgment on the merits as well as on the basis of qualified immunity. From this latter ruling, Officers Wiggs and Davis appeal.[2]

_____

[2] The officers seek a ruling on whether they violated clearly established law accepting the undisputed facts, assuming as true the facts identified by the district court, and viewing the remaining evidence in the light

4

II.

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In analyzing an appeal from the rejection of a qualified immunity defense, our first task is to identify the specific right that the plaintiff asserts was infringed by the challenged conduct. See Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). We then consider whether, at the time of the claimed violation, this right was clearly established and "`whether a reasonable person in the official's position would have known that his conduct would violate that right.'" Id. (quoting Gordon v. Kidd, 971 F.2d 1087, 1093 (4th Cir. 1992)).

The Estate asserts that Braswell was deprived of his Fourth Amendment right to avoid unreasonable seizures because the deadly force used to take him into custody was excessive. The Fourth Amendment permits the use of deadly force by a law enforcement officer if the officer "has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (citing Tennessee v. Garner, 471 U.S. 1, 11 (1985)). Thus, Officer Davis[3] should prevail on his claim of entitlement to qualified immunity if a reasonable officer possessing the same information that Officer Davis did could have had probable cause to believe that Braswell presented a serious threat of personal harm at the time he pulled the trigger. See id.

_____

most favorable to the Estate. The officers do not attempt to relitigate whether the evidence presented was sufficient to raise a genuine issue of material fact with respect to the disputed facts that the district court identified. Consequently, we possess jurisdiction to consider this appeal. See Winfield v. Bass, 106 F.3d 525, 529-30 (4th Cir. 1997) (en banc).

[3] It is undisputed that Officer Wiggs did not aid and abet in the use of deadly force to seize Braswell. See Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991) (holding that proper focus for determining reasonableness of force is circumstances at the moment force was used). Accordingly, Officer Wiggs was entitled to summary judgment.

5

To apply this legal standard, we must first determine the factual basis for our decision. See Winfield v. Bass, 106 F.3d 525, 532-35 (4th Cir. 1997) (en banc). We arrive at this factual basis for our decision by accepting facts that are undisputed, assuming the truth of evidence deemed adequate by the district court to raise a genuine issue of material fact, and viewing the remaining evidence in the light most favorable to the Estate. See id.

Here, it is undisputed that prior to arriving, all Officer Davis knew about Braswell was that a family member had reported that he was mentally disturbed, that he had refused to take his medication for an extended period of time, that he had gone berserk, and that he had become violent. After the officers arrived, Braswell ran and hid in a squalid structure that provided limited access and poor visibility, refusing to listen to reason from a family member. Subsequently, it became apparent that Braswell would not agree to accompany the officers, and he stood from the chair cursing the officers and announcing either, "you've got me to kill" or "[y]ou ... have come here to kill me." J.A. 67, 496 (internal quotation marks omitted). Braswell then began to advance on the officers, swinging his right arm wildly as if he were holding a weapon. Officer Davis backed up to escape from Braswell until he had retreated as far as he could. Braswell continued to move toward Officer Davis, until Braswell was within a few feet of him. Both officers unholstered their firearms, and Officer Davis fired two shots at Braswell. After this initial volley, Braswell remained on his feet with his arm in the air; Officer Davis fired three more shots. Braswell then fell to the floor, and the officers summoned assistance. We also accept as true the facts suggested by the evidence that the district court identified as creating a genuine issue of material fact--that Braswell was not actually holding a weapon when he attacked the officers[4]; that the lighting in the room was somewhat lim-

_____

[4] Photographs of Braswell's body following the shooting show a metal hammer in Braswell's right hand, and the officers testified that although it appeared to them prior to the shooting that Braswell was brandishing a knife, he was actually swinging the hammer. The Estate, however, presented testimony to the district court indicating that the hammer may have been placed in Braswell's hand after his death. Because the district court ruled that the evidence was sufficient to raise a genuine issue of material fact concerning whether Braswell actually was holding the hammer when he was shot, we assume for purposes of our decision that he was not.

6

ited; that the officers' vision was impaired to some extent because they had removed their glasses; and that the officers failed to warn Braswell prior to the shooting.

Even if Braswell was not holding a weapon when he advanced on the officers and the officers gave Braswell no warning before firing, Officer Davis is entitled to summary judgment on the basis of qualified immunity as a matter of law because a reasonable officer in his position could have had probable cause to believe that Braswell posed a substantial risk of harm to him. See Elliott v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996), cert. denied, 117 S. Ct. 2512 (1997); Slattery, 939 F.2d at 216-17. The district court did not conclude that a genuine issue of material fact existed concerning whether the officers perceived that Braswell was brandishing a weapon, and viewing all of the evidence presented in the light most favorable to Braswell, we conclude that the evidence is insufficient to support a conclusion that the officers did not perceive that Braswell had a weapon. Because a reasonable officer in Officer Davis' position could have believed that Braswell posed a substantial risk of physical injury, and because it is undisputed that Officer Wiggs did not aid and abet in the use of deadly force, we reverse the judgment of the district court.

REVERSED

7