Catherine L. AUSTIN, Administratrix
of the Estate of Maurice Taylor,
deceased, Plaintiff,

v.

TOWN OF BLACKSBURG,
et al., Defendants.

Civil Action No. 97–0541–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

July 1, 1998.

Billy Kenneth Cruey, B.K. Cruey, P.C., Shawsville, VA, for plaintiffs.

David B. Hart, Wooten & Hart, Roanoke, VA, Peter Duane Vieth, Wooten & Hart, P.C., Roanoke, VA, Kathleen Anne Dooley, Blacksburg Town Attorney, Blacksburg, VA, for defendants.

## *MEMORANDUM OPINION*

WILSON, Chief Judge.

Catherine Austin ("plaintiff"), administratrix of the estate of her deceased son, Maurice Taylor, brought this action, asserting claims under 42 U.S.C. § 1983 and Virginia law, against the Town of Blacksburg ("Blacksburg") and three of its police officers, J.E. Keene, T.D. Wimmer, and Michael Mickey (collectively "officers"). The defendants, asserting qualified immunity and other defenses, moved for summary judgment. After oral argument, but before the court ruled on this motion, the plaintiff presented additional evidence to the court. The court delayed its ruling on the motion to allow for additional discovery in light of this late filing. After reviewing all the evidence, the court, for the reasons stated below, grants the motion for summary judgment.

## I. Facts

On August 9, 1995, the three officers entered a Revco Drug Store in Blacksburg, Virginia, to arrest Maurice Taylor on a capias issued on July 17, 1995 by the Circuit Court of Montgomery County.[1] The officers, unnoticed by Taylor, who was facing the store counter, encircled Taylor as he transacted business with the Revco clerks.[2] Officer Mickey then asked him if he was Maurice Taylor. He denied that he was Maurice Taylor, and Officer Keene replied that he recognized Taylor.

Taylor immediately pulled what appeared to be a handgun from the waistband of his pants. Officer Mickey grabbed Taylor's left arm in an attempt to control him. Despite the efforts of Officer Mickey, who could only obtain a loose hold, Taylor pointed the gun, which he held in his right hand, back and forth between Officers Keene and Wimmer. In response, Officer Keene and Officer Wimmer drew their weapons and rapidly fired until Taylor dropped the gun and fell to the floor. The officers fired eighteen times, shooting Taylor twelve times, including four in the back. They also accidentally shot Officer Mickey, who never drew his weapon. Taylor died as a result of his injuries. Later, it was discovered that Taylor's gun was a B.B. gun designed to closely resemble a real handgun.

The plaintiff, as administratrix of Taylor's estate, filed a nine-count civil action against Blacksburg and the officers. The complaint alleges that the defendants violated Taylor's constitutional rights. It also raises several state law claims. The defendants moved to dismiss pursuant to Rule 12(b)(6) on multiple grounds, including qualified immunity as to the § 1983 claim. This motion was transformed into a motion for summary judgment.

1. The court issued the capias because of Taylor's failure to appear in that court on July 14, 1995.

2. According to the uncontested affidavit of the officers, the officers were advised that Taylor

## II. Section 1983 claims

Section 1983 creates a cause of action for plaintiffs deprived of federal constitutional or statutory rights by persons acting under the color of state law. *See* 42 U.S.C. § 1983; *see also Jenkins v. Medford*, 119 F.3d 1156, 1159–60 (4th Cir.1997); *Mensh v. Dyer*, 956 F.2d 36, 39 (4th Cir. 1991). The complaint sets forth several acts of the officers that allegedly violated Taylor's constitutional rights. Specifically, the complaint contends that the officers and the town violated his rights by using excessive force against him, by "handcuffing Taylor after he was fatally wounded," by "apprehend[ing] Taylor by surprise in a public place without informing him of the reason for his apprehension," and by "fil[ing] a false report with the medical examiner." The court finds that all these claims fail summary judgment scrutiny.

### A.

In the most serious allegation, the plaintiff claims that the officers and Blacksburg used excessive force when they used deadly force against him. In response, the defendants assert qualified immunity as a bar to civil liability. The court agrees that, based on uncontroverted evidence, qualified immunity protects the defendants from liability on this claim.

The Fourth Circuit has expressly recognized that the doctrine of qualified immunity applies in excessive force cases. *Elliott*, 99 F.3d at 642; *see Slattery*, 939 F.2d at 215–16. Qualified immunity shields government officials performing discretionary functions from civil liability "to the extent their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Slattery*, 939 F.2d at 216 (quoting *Harlow v. Fitzgerald*,

might attempt to run if confronted by police. In addition, the officers contend that they were aware that Taylor had previously been charged with brandishing a firearm and that they had been told that Taylor might have a gun.

457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *see McLenagan v. Karnes,* 27 F.3d at 1006. Thus, qualified immunity provides greater protection than a defense on the merits; it bars civil liability "if a reasonable officer possessing the same information could have believed that his conduct was lawful" even if the conduct was, in fact, unlawful. *Slattery,* 939 F.2d at 216 (citing *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see McLenagan,* 27 F.3d at 1006.

■■■ Claims of excessive force in the arrest or investigatory stop context "should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[3] *Graham·v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Elliott,* 99 F.3d at 642. This objective standard requires the court to ask "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996) (citing *Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865); *see Rowland v. Perry,* 41 F.3d 167, 172–73 (4th Cir.1994). Use of deadly force is reasonable if the officer has probable cause to believe that the individual poses a threat of serious bodily harm to the officer or others. *Tennessee v. Garner,* 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *see Elliott,* 99 F.3d at 642; *McLenagan v. Karnes,* 27 F.3d 1002, 1006–07 (4th Cir. 1994); *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991). The court must look to the facts and circumstance of each case and judge the particular use of force "from the perspective of the reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Courts must recognize that officers often must make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Id.* at 396–97, 109 S.Ct. 1865.

■■■ Consolidating the doctrines of qualified immunity and excessive force, the officers are not liable if a reasonable police officer, under the circumstance of this case, could believe that probable cause existed to justify the particular use of deadly force at issue.[4] *See McLenagan,* 27 F.3d at 1006–07; *Slattery,* 939 F.2d at 216. In this case, not only could a reasonable person conclude that probable cause existed, probable cause, *in fact,* existed, and qualified immunity bars the plaintiff's excessive force claim.

■■■ Taylor, not the officers, set this deadly chain of events in motion. The substantial and uncontroverted evidence of this case, consisting of the testimony of the officers and an eyewitness, indicates that, in response to the attempted arrest, Taylor pointed the mock handgun directly at the officers. Only when Taylor seemingly threatened their lives did the officers unholster their weapons and fire. Although the officers shot eighteen rounds at Taylor, they ceased firing when he dropped the gun and fell to the floor. *See Elliott,* 99 F.3d at 643 (reversing denial of police officers summary judgment motion where police shot the plaintiff twenty-two times

---

3. The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

4. The plaintiff suggests that the officers are not entitled to qualified immunity because their allegedly unlawful conduct demonstrates that they acted "beyond the scope of [their] authorized duty." It is true that "an official who performs an act clearly established to be beyond the scope of his discretionary authority is not entitled to claim qualified immunity

under § 1983." *In re Allen,* 106 F.3d 582, 593 (4th Cir.1997). However, this is a rare exception that is not applicable simply because a government official violated the law. *Id.* at 594. A government official acts within the scope of his authority when "the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Id.* Under this standard, the use of deadly force while making an arrest is within the scope of the discretionary authority of police officers.

and stating that the number of shots "cannot be determinative as to whether the force used was reasonable.") Under such circumstances, the use of deadly force was reasonable.[5] *See, e.g., Elliott,* 99 F.3d at 642–43; *McLenagan,* 27 F.3d at 1006–08; *Slattery,* 939 F.2d at 216.

The plaintiff claims that, although Taylor may have drawn a weapon, the officers unreasonably employed deadly force after they had overcome the risk posed by Taylor. The plaintiff offers evidence that two bullets struck the floor in the area where the officers shot Taylor and evidence that four bullets struck Taylor's back. From this evidence, the plaintiff argues that a reasonable fact finder could conclude that, after Taylor fell to the ground, the officers maliciously shot him while he defenselessly laid injured. The court disagrees. Plaintiff's evidence simply does not sufficiently support the conclusions she seeks to draw. In the absence of eyewitness testimony or forensic evidence, the plaintiff's theory is the product, not of reasonably drawn inferences, but of rank speculation. Both Offi-

cer Keene and Officer Wimmer stated that they continued to fire only until Taylor fell to the floor and dropped his gun. In the absence of meaningful evidence to the contrary, the court finds that qualified immunity bars the plaintiff's excessive force claim.[6] *See Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985) (stating that a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another").

■■■ The evidence against Blacksburg is also inadequate. First, in the absence of evidence of excessive force by the officers, the claim against the town also must fail. *See Hinkle v. City of Clarksburg,* 81 F.3d 416, 420 (4th Cir.1996). Second, the plaintiff provided absolutely no evidence to prove that the officers conduct, if unlawful, resulted from "the execution of a government's policy or custom." *Monell v. Department of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Such evidence is necessary to establish a § 1983 claim against a municipali-

5. At times, the plaintiff seems to suggest that the manner in which the police approached Taylor is relevant to the issue of excessive force. Specifically, the plaintiff complains that the officers "attempted to apprehend the decedent by surprise without informing him of the reason for the apprehension." As stated below, the manner in which the police attempted to arrest Taylor was not only permissible, but, under the circumstances, advisable. Additionally, even if that conduct were impermissible, it would be irrelevant to the issue of excessive force. *See Drewitt v. Pratt,* 999 F.2d 774, 779–80 (4th Cir.1993) (finding police officer's failure to display badge irrelevant to issue of excessive force); *Greenidge v. Ruffin,* 927 F.2d 789, 791–92 (4th Cir.1991) (upholding the exclusion of evidence that allegedly demonstrated that the police officer who shot the plaintiff recklessly created a dangerous situation).

In addition, the plaintiff claims that Officer Mickey held Taylor's arms down while the other officers shot him. At the same time, the plaintiff claims that Officer Mickey had Taylor in a "choke hold" during the shooting. Neither assertion is supported by any evidence.

Nor is the officers' defense diminished because Taylor's gun turned out to be a B.B. gun designed to look like a real weapon. The

officers must act reasonably, but they need not be correct. *Elliott,* 99 F.3d at 644. "[T]he Fourth Amendment does not require omniscience.... Officers need not be absolutely sure ... of the nature of the threat or the suspect's intent to cause them harm—the Constitution does not require that certitude precede the act of self-protection." *Id.* at 644. The Fourth Circuit has upheld the use of deadly force where the police had less reason to believe that a suspect was armed with a deadly weapon. *See, e.g., Slattery,* 939 F.2d at 216 (reversing denial of officer's summary judgment motion where officers mistook beer bottle for a weapon); *McLenagan,* 27 F.3d at 1006–08 (reversing denial of officer's summary judgment motion where officer shot unarmed plaintiff after another officer yelled, "The man has got a gun").

6. The plaintiff also relies on two additional pieces of evidence. However, the plaintiff is unable, in any way, to connect this evidence to the issues presented by this case. First, the police found Taylor's broken necklace where he was shot. Second, although he did not see the shooting, some time later the store manager saw the B.B. gun located twelve feet away from Taylor's body. This evidence in no way is probative of whether the police shot Taylor after he was incapacitated.

ty. *Id.; Spell v. McDaniel,* 824 F.2d 1380, 1385 (4th Cir.1987).

## B.

The plaintiff also alleges that three other acts by the officers violated Taylor's constitutional rights. However, none of these claims can survive summary judgment.

 First, the plaintiff contends that the police used excessive force by handcuffing Taylor after the shooting. The plaintiff only presented evidence that, at an unspecified time after the shooting and for an unspecified reason, someone handcuffed Taylor. Without more, the court finds insufficient evidence to merit a trial on this claim.

Second, the plaintiff argues that the officers "participated in a scheme with other officers to apprehend Taylor by surprise in a public place without informing him of the reasons for his apprehension." For obvious reasons, there is no established rule, nor should there be a requirement, that the police must announce their presence *prior* to making an arrest in public. Even after execution of an arrest, the police need not immediately inform the arrestee of the reasons for the arrest. *See Williams v. Schario,* 93 F.3d 527, 528–29 (8th Cir.1996); *Kladis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987). And if such a rule existed, the circumstances of this case surely would excuse any failure to comply.

Third, the plaintiff alleges that the officers violated Taylor's constitutional rights by "fil[ing] a false report with the medical examiner." Even if such a cause of action exists, another assumption of questionable merit, no evidence exists to support it.[7]

---

7. Once again, in the absence of an actionable claim against the officers and in the absence of evidence of policy or custom, these claims also fail against the town.

8. Other defenses may also warrant summary judgment. Under Virginia law, when a police officer arrests an individual for brandishing

## III. State law claims

The plaintiff also brings several state law claims against the officers and Blacksburg, including allegations of assault and battery, gross negligence and recklessness, negligence, and interference with state constitutional rights. These claims cannot withstand the defendants' summary judgment motion. As stated above, based upon the evidence presented, a reasonable jury could conclude only that the officers acted reasonably and justifiably. In such circumstance, the state claims cannot stand against the officers. *See A.H. v. Rockingham Publishing Co.,* 255 Va. 216, 495 S.E.2d 482, 487 (1998) (stating that negligence is "premised upon the objective concept of what a reasonably prudent person in the exercise of reasonable care would have done in similar circumstances"); *Frazier v. City of Norfolk,* 234 Va. 388, 362 S.E.2d 688, 691 (1987) (defining gross negligence as the "absence of slight diligence, or the want of even scant care"); *Pike v. Eubank,* 197 Va. 692, 90 S.E.2d 821, 825 (1956) (requiring an act lacking justification or excuse for a finding of assault and battery). Similarly, there is no evidence that Blacksburg acted improperly in any way.[8]

## IV. Conclusion

The uncontroverted evidence discloses that Maurice Taylor pointed an apparent firearm at the police officers and was killed in an instantaneous hail of gunfire. The incident is unfortunate and tragic. It is, however, not actionable. Accordingly, the defendants' motion for summary judgment is granted. The court will enter an appropriate order on this day.

---

an object similar in appearance to a firearm, the officer is immune from civil liability for injuries resulting from such arrest if the officer had reason to believe that the person being arrested brandished the object with the intent of inducing fear in the mind of another. Va.Code Ann. § 18.2–282(B).