**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK LINWOOD MILLS,
<u>Plaintiff-Appellee,</u>

v.

JAY J. CLARK, Superintendent of
Southern Correctional; MICHAEL T.
W. BELL, Superintendent of Wayne
Correctional Center,
<u>Defendants-Appellants,</u>

                          No. 99-6334

and

NORTH CAROLINA DEPARTMENT OF
CORRECTIONS; MARVIN L. POLK,
Superintendent of Franklin
Correctional; JOHN WILLIAMS,
Superintendent of Tillery
Correctional; MACK JARVIS,
<u>Defendants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-877-5-BR)

Argued: September 24, 1999

Decided: September 5, 2000

Before WIDENER and MOTZ, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Reversed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Elizabeth F. Parsons, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants. Kristin Davis Parks, NORTH CAROLINA PRISONER LEGAL SERVICES, INC., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, North Carolina Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Defendants Michael T. W. Bell and Jay Clark appeal the denial of their February 3, 1999 motion for summary judgment based on qualified immunity. Plaintiff Frank Linwood Mills was a prisoner of the State of North Carolina. Plaintiff brought this civil action pursuant to 42 U.S.C. § 1983 alleging he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Because we conclude that under the circumstances of this case defendants' actions did not violate a clearly established right of the plaintiff, we reverse the decision of the district court denying qualified immunity to both defendants.

I.

For the purposes of this appeal, the facts may be briefly summarized. From November 1996 to October 1997, plaintiff was confined at four North Carolina correctional institutions. On November 20, 1996, plaintiff was admitted to Southern Correctional Institution in Troy, North Carolina. Plaintiff was subsequently transferred three different times. At each of the correctional institutions, plaintiff filed for-

2

mal grievances that were all similar in nature. In each grievance, plaintiff complained of chest pain and shortness of breath resulting from environmental tobacco smoke, commonly known as second hand smoke. Only the circumstances surrounding plaintiff's confinement at the first two correctional facilities, Southern Correctional Institution and Wayne Correctional Center, are pertinent to this appeal.[1]

At Southern, plaintiff was assigned to one of twelve bunk beds located in a day room where inmates were permitted to smoke. Plaintiff filed his first formal grievance on November 20, 1996, complaining of chest pain and shortness of breath that lasted for hours a day.

Plaintiff was transferred to Wayne on January 2, 1997. On February 27, 1997,[2] the superintendent of Southern formally responded to plaintiff's initial grievance and stated that a preference for smoking or non-smoking was not a determining factor in bed assignments because of the computerized ventilation system, but upon recommendation from medical staff, prisoners could be moved to accommodate a medical condition. While at Southern, plaintiff's medical records indicate he made no complaints about injury from second hand smoke to Southern's medical personnel, although he did complain about a previous fall in Halifax County and was treated for that by Dr. Boyles on November 22, 1996.

While at Wayne, plaintiff was required to attend weekly sessions in a substance abuse program. On January 4 and 11, 1997, plaintiff filed grievances which stated that although no-smoking signs were posted where the program was held, approximately 125 of the 150

_____

[1] The first transfer was to Wayne Correctional Center on January 2, 1997, the second transfer was to Franklin Correctional Center on February 4, 1997, and finally plaintiff was transferred to Tillery Correctional Center on July 17, 1997.

Only Mills' claim for damages at the first two prisons are before us in this appeal. All the other claims have been resolved adversely to Mills and are not appealed.

[2] The grievance was made and received by prison officials on December 25, 1996, but response was apparently delayed because Mills had another grievance pending at that time.

3

inmates participating in the program smoked during the sessions.**3** Plaintiff further stated that his exposure to environmental tobacco smoke during these sessions caused him chest pain and shortness of breath. As at Southern, the record indicates plaintiff made no complaint with respect to second hand smoke to the medical staff while at Wayne.

Plaintiff initiated this action naming as defendants the North Carolina Department of Correction; Jay Clark, the Superintendent of the Southern Correctional Center; Michael T. W. Bell, Superintendent of Wayne Correctional Center; Marvin Polk, Superintendent of Franklin Correctional Center; and John Williams, Superintendent of the Tillery Correction Center. Plaintiff alleged that the Department of Corrections and the staff at each correctional center were deliberately indifferent to his exposure to environmental tobacco smoke. The district court dismissed plaintiff's claims for monetary damages against the Department of Corrections and the superintendents in their official capacities. The court also dismissed the plaintiff's claims for injunctive relief against the superintendents of Southern, Franklin, and Wayne Correctional Centers as moot. Finally, with respect to plaintiff's claim for monetary damages against each of the superintendents individually, the district court granted summary judgment in favor of defendants Polk and Williams, but denied defendants Clark's (Southern) and Bell's (Wayne) motion for summary judgment based on qualified immunity.

Bell and Clark appealed to this court.

II.

The only issue we consider is whether the district court correctly denied defendants' summary judgment motion upon determining that defendants were not entitled to qualified immunity. The principles of summary judgment and qualified immunity that control our review follow.

_____

**3** Defendants were unable to locate a response to plaintiff's January 4, 1997 and January 11, 1997 grievances.

4

It is now well accepted that, "`[A] district court's denial of a claim of qualified immunity . . . is an appealable final decision within the meaning of 28 U.S.C. 1291 notwithstanding the absence of a final judgment.'" Renn v. Garrison, 100 F.3d 344, 349 (4th Cir. 1996) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). We review the district court's denial of a defense of qualified immunity de novo. Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994).

Qualified immunity shields government officials performing discretionary functions from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir. 1991) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The plaintiff's rights must be established so clearly that a "reasonable official would understand that what he is doing violates that right." Slattery, 939 F.2d at 216 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Accordingly, ruling on a defense of qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the[official's] position would have known that doing what he did would violate that right." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992).

In order to shield officials from both the burdens of litigation as well as liability, establishment of qualified immunity is encouraged at the summary judgment stage. Pritchett, 973 F.2d at 313 (citing Harlow, 457 U.S. 815-819). However, summary judgment remains appropriate "only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as matter of law." Pritchett, 973 F.2d at 313 (citations omitted). Thus, we only consider whether a reasonable officer would have known that his conduct violated a specific right if there are no genuine issues of fact with respect to the official's conduct under the circumstances. If issues of fact do exist, summary judgment is inappropriate, and the issue must be reserved for trial. Pritchett 973 F.2d at 313 (citing Mitchell, 472 U.S. at 526).

III.

Keeping in mind these principles, we now address whether the district court properly denied defendants' claims of qualified immunity.

5

In determining whether the specific right allegedly violated was clearly established, tolerance is accorded in the qualified immunity defense to "'good faith' mistakes of judgment traceable to unsettled law, or faulty information, or contextual exigencies. . . [which] is deliberately designed to give protection to `all but the plainly incompetent or those who knowingly violate the law.'" Pritchett, 973 F.2d at 313 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Helling v. McKinney, the Supreme Court held that a plaintiff "states a cause of action under the Eighth Amendment by alleging that . . . [the defendants] have, with deliberate indifference, exposed him to levels of . . . [environmental tobacco smoke] that pose an unreasonable risk of serious damage to his future health." 509 U.S. 25, 35 (1993). In determining whether environmental tobacco smoke conditions are sufficient to violate the Eighth Amendment requires "more than a statistical inquiring into the seriousness of the potential harm," but also an assessment of whether "society considers the risk . . . so grave that it violates contemporary standards of decency." Helling, 509 U.S. at 36. Therefore, Helling establishes a constitutional right to be free from a level of environmental tobacco smoke so high that it poses an unreasonable risk of serious damage to future health, and to prevail, a plaintiff must show that he has not only been exposed to such unreasonably high levels of smoke but also that such exposure is contrary to current standards of decency for anyone to be so exposed and that today's society will not tolerate such exposure. Helling, 509 U.S. at 35-36.

Helling involved a prisoner who was assigned to a cell with an inmate who smoked five packs of cigarettes per day. Helling, 509 U.S. at 36. In determining that the prisoner had stated a valid cause of action under the Eighth Amendment, the Court impliedly found that exposure to such amounts of environmental tobacco smoke could be found to be unreasonably high. But Helling goes no further in defining what constitutes unreasonably high levels of environmental tobacco smoke. As a result, while a prisoner may have a clearly established right to be free from unreasonably high levels of environmental tobacco smoke after Helling, a superintendent may be unaware that a prisoner's current exposure amounts to this unreasonably high level. Qualified immunity will continue to protect superintendents who make discretionary decisions in situations where a prisoner's expo-

6

sure to environmental tobacco smoke is not clearly unreasonably high.

Because we find that plaintiff's exposure to environmental tobacco smoke in this case was not to a degree that would have lead a reasonable official to conclude that a person's rights were violated, defendants are entitled to qualified immunity.

A.

Turning first to the 43 day period plaintiff spent at Southern Correctional Institution. Plaintiff's Grievance No. 4215-97-0018 states that his environmental tobacco smoke exposure caused him shortness of breath and pain in the chest. The response to plaintiff's grievance shows that defendant Clark considered plaintiff's complaint and followed the policies of both the Division of Prisons and Southern Correctional Institution. The response shows the reliance of Clark that the computerized ventilation system was sufficient for those prisoners but that in cases in which documented medical problems occurred [here second hand smoke] and upon recommendation from the medical staff, an inmate would be moved to another bed to correct the medical problem.

The prison's response relates that "preference for smoking or non-smoking is not a determining factor in bed assignments due to the computerized ventilation system. However, under circumstances where documented medical problems exist_s and a recommendation from the medical staff, a bed movement is made to satisfy the medical condition." The response further relates that on admission, Mills complained to the medical authorities at Southern about a fall he had previously suffered which resulted in back pain. The medical record for that instance shows that he also complained at that time about a sprained wrist, but that he did not complain about any other medical or health problem while he was confined at Southern. Because the system was in place at Southern to allay any justified complaint of Mills with respect to the effect of second hand smoke on his health, and he did not take advantage of the relief afforded him, we are of opinion that it was not clearly established to the knowledge of the prison authorities that the level of second hand smoke in this dormitory with computerized ventilation posed any unreasonable risk of

7

serious damage to the health of Mills. Thus, we are of opinion that Mills' rights under <u>Helling</u> have not been violated and that the district court erred in not dismissing the complaint against the defendant Clark, the prison superintendent at Southern. Clark's discretionary decision, based on the institutional policy above-described and with no evidence of physical harm, although available, is just the kind of circumstance which the doctrine of qualified immunity seeks to protect.

B.

We now turn to the 34 day period plaintiff spent confined at Wayne Correctional Center. At Wayne, plaintiff filed grievances stating that he was placed in a room where approximately 100-125 of the 150 inmates were smoking, which again caused him shortness of breath and chest pain. Plaintiff was assigned to the room at issue only one hour each week[4] for a substance abuse program which he had unsuccessfully attempted to avoid apparently because he considered it unnecessary. Again, the record indicates that plaintiff did not complain to the medical staff about his alleged problems attributable to environmental tobacco smoke. Moreover, other than plaintiff's complaint, the record does not indicate that the exposure was unreasonably high.

We are of opinion that exposure to environmental tobacco smoke once a week for only one hour does not, on its face, rise to the level of unreasonably high exposure required by <u>Helling</u>. It is common knowledge that such a level of second hand smoke is present at some time in some part of almost every restaurant in the United States. Additionally, unlike the prisoner in <u>Helling</u>, plaintiff does not allege he was constantly exposed to environmental tobacco smoke at Wayne. <u>Helling</u> does not guarantee plaintiff a smoke free environment, and we find that plaintiff does not have a clearly established constitutional right to be free from exposure to environmental tobacco smoke during a substance abuse program for one hour one day each week for five weeks at the most.[5] Because no such right was clearly

_____

[4] The record shows that Mills attended two of the substance abuse sessions and may have attended three more. The record is not certain.
[5] **<u>Helling</u>** requires of a prisoner that "`he <u>himself</u> is being exposed to unreasonably high levels of' second hand smoke." 509 U.S. at 36 (italics

8

established, Bell's decision at Wayne not to remove plaintiff from the program or to take additional action is entitled to qualified immunity, and the district court erred in not dismissing the complaint as to him. The judgment of the district court is accordingly

REVERSED.

_____

added), and Scott v. District of Columbia, 139 F.3d 940, 942 (D.C. Cir. 1998), has correctly decided that "Helling did not read the Eighth Amendment as mandating smoke-free prisons." Absent a constitutional guarantee of a smoke free prison, there must be a de minimis requirement in this type of case. Without deciding what that requirement is, we think it has been reached here, so that exposure in a classroom with 125 smokers for two, and perhaps five, one-hour sessions, a week apart, is not such an unreasonably high level of second hand smoke to be an unreasonable risk of serious danger to future health. Helling , 509 U.S. 35, 36. A further requirement of Helling, that there be an objective factor in the determination, is not possible to be found without knowing whether or not the degree of exposure in the particular case, to "he himself," Helling at 36, presents an unreasonable risk of serious damage to future health. See Helling, 509 U.S. at 35. Although the fact of Mills' exposure to second hand smoke was known in each of the two prison settings involved here, and the extent known at Wayne especially, there is no evidence that such was so unreasonably high as to present risk of serious damage to Mills' future health. See Helling, 509 U.S. at 35.

9