WIDENER, Circuit Judge,
concurring and dissenting:
As to Count I of the complaint, I respectfully dissent. As to Count II, I concur in the result. I concur in the dismissal of the appeal of Coach Pruett.
I respectfully dissent on account of the failure of the district court, and the majority in our case, to grant qualified immunity to the administrators at Marshall Universi *322 ty with respect to the defamation count, Count I of the complaint.
The § 1983 claims are based on two incidents. The first is the NCAA infraction report of December 21, 2001, an advance copy of which had been supplied to the University sometime previously. That report described, at the instance of the University, the “transfer [ ... of] the compliance director from athletics to another depax-tment at the university” as a “corrective action [...]”
The plaintiff claims such use, by the University, of the term “corrective action” is defamatoxy and has damaged his reputation so that his opportunities for employment within his chosen profession, college athletics, have been, or will be, damaged.
In the first incident, based on defamation, the record does not disclose the words which were used by the University in reporting to the NCAA Dr. Ridpath’s transfer as a corrective action. Neither does it show whether that communication was oral or written.
I assume for the moment, for argument, that labeling Dr. Ridpath’s transfer from the athletic department to be the Director of Judicial Programs could be defamatory when described as a corrective action, but that does not end the inquiry. Damage to Di\ Ridpath’s reputation, which is the root cause of this law suit, is not actionable under § 1983.
The district coxxrt, in its opinion, described Dr. Ridpath’s claim:
Ridpath, on the other hand, contends that he has not alleged that he had a property interest in his employment at MU. Instead, he asserts that the ‘corrective action’ label assigned to his transfer to the position of Director of Judicial programs at MU without due process ho,s destroyed his reputation in the field of collegiate athletics because that label is generally understood by those connected to college athletics to be a code term importing dishonesty and incompetence on the part of individuals to whom it is alleged. J.A. 242. (Italics added.)
In my opinion, this case is controlled by Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). In that case, St. Elizabeths Hospital, a facility of the United States, notified Siegert, a clinical psychologist, that it was preparing to terminate his employment, giving as the reason that his “ ‘proposed removal was based upon his inability to report for duty in a dependable and reliable manner, his failure to comply with supervisory directives, and cumulative charges of absence without approved leave.’ ... After meeting with hospital officials, Siegert agreed to resign from the hospital and thereby avoid a termination that might damage his reputation.” 500 U.S. at 228, 111 S.Ct. 1789. SiegexT then began work as a clinical psychologist in a United States Army hospital in Bremerhaven, West Germany. At that Army hospital, he signed a credential information request form, asking that St. Elizabeths provide all information on job perfoxunanee and privileges while at St. Elizabeths. Siegert’s request was referred to Gilley, who had been Sie-gert’s supexvisor at St. Elizabeths. Gilley notified the Army that
“he could not recommend [Siegert] for privileges as a psychologist.” ... In that letter, Gilley wrote that he “considered Dr. Siegert to be both inept and unethical, perhaps the least trustworthy individual I have supervised in my thirteen years at [St. Elizabeths].” 500 U.S. at 228, 111 S.Ct. 1789.
After receiving Gilley’s letter, the Army told Siegert that because reports about him were extremely unfavorable, its Credential Committee was recommending that *323 he not be credentialed. He later was given provisional credentials limited to his work with adults. Siegert’s suit against Gilley followed. Siegert contended that “the loss of his position at the Bremerha-ven Hospital, followed by the refusal of the Army hospital in Stuttgart to consider his application for employment, and his general inability to find comparable work because of Gilley’s letter, constituted such a deprivation [of a 'liberty interest’ secured by the Fifth Amendment to the United States Constitution].” 500 U.S. at 232, 111 S.Ct. 1789.
The Court decided that injury to reputation is not an interest protected under the Constitution. “Defamation, by itself, is a tort actionable under the laws of most States, but not a Constitutional deprivation.” 500 U.S. at 233, 111 S.Ct. 1789. The Court reasoned that
The statements contained in the letter would undoubtedly damage the reputation of one in his position, and impair his future employment prospects.... But so long as such damage flows from injury caused by the defendant to a plaintiffs reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action. 500 U.S. at 234, 111 S.Ct. 1789.
The court affirmed the dismissal of Sie-gert’s Bivens claim, and its holding was explicit and free from doubt:
We hold that the petitioner in this case [Siegert] failed to satisfy the first inquiry in the examination of such a claim; he failed to allege the violation of a clearly established constitutional right. 500 U.S. at 231, 111 S.Ct. 1789.
And the Court noted, at 229 and 234, that Siegert did not make a claim of diverse citizenship to prosecute a claim for defamation. We note that Dr. Ridpath has made no state law claim for defamation here. If Dr. Ridpath had wished to bring a defamation suit for slander or libel in a court of appropriate jurisdiction, he might have done so, but that is not a question before us.
I note that, in DiMeglio v. Haines, 45 F.3d 790 (4th Cir.1995), a § 1983 case as here, we followed Siegert and held “[i]n deciding qualified immunity claims, courts should determine whether the plaintiff has alleged the violation of a constitutional right that was clearly established at the time of the defendant’s actions, before they proceed to address any ancillary issues.” 45 F.3d at 797.
In my opinion, the facts in the Siegert case and the facts in the present case are so nearly the same that Siegert must control. The defamatory language in Siegert is equally as defamatory as that claimed here; the claims of Siegert and Dr. Rid-path are each based on due process, whether under the Fifth Amendment or the Fourteenth, is a matter of indifference; and both Siegert and Dr. Ridpath claim that resulting damage is because of injury to reputation, which the Court held not actionable under Siegert as a Constitutional deprivation. 500 U.S. at 233, 111 S.Ct. 1789.
No violation of a Constitutional right having been established, qualified immunity should have been granted as to the defamation claim. Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir.1991); Kitchen v. Upshaw, 286 F.3d 179, 189 (4th Cir.2002); DiMeglio, 45 F.3d at 808.
As for the second incident, Count II of the complaint, based on free speech, I concur in the result on the basis of our decision in McVey v. Stacy, 157 F.3d 271 (4th Cir.1998). In McVey, the district court had declined to dismiss the First Amendment claim, as here, and it rejected qualified immunity “at this stage in the litigation” because “the record had not *324-342 been developed.” McVey, 157 F.3d at 275. Our decision was to “affirm the district court’s ruling to defer deciding on the qualified immunity issue until the record is better developed on the immunity issues.” McVey, 157 F.3d at 279. I continue to disagree with the majority that the complaint alone justifies a finding that Ridpath spoke as a citizen rather than as an employee, largely because he had been instructed by his superiors not to speak out publicly. See Connick v. Myers, 461 U.S. 138, esp. p. 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (deciding for the State, the Court found, at p. 150, 103 S.Ct. 1684, “The Pickering balance requires full consideration of the government’s interest in the effective and efficient fulfillment of its responsibilities to the public.”); and DiMeglio v. Haines, 45 F.3d 790 (4th Cir.1995) (holding a municipal government employee’s remarks may not be protected under Connick if he was speaking as an employee, rather than as a citizen). Nevertheless, I believe a concurrence in the result is more in order than a dissent in view of the majority’s decision that the matter is not closed. See footnote 23, supra. So any present error on this account is harmless.