41 F.3d 167
 Otha ROWLAND, Jr., Plaintiff-Appellee,
v.
B.M. PERRY, Individually and as Police Officer, City of
Raleigh Police Department; City of Raleigh, a municipal
corporation organized under and pursuant to the laws of the
State of North Carolina, Defendants-Appellants.
Otha ROWLAND, Jr., Plaintiff-Appellant,
v.
B.M. PERRY, Individually and as Police Officer, City of
Raleigh Police Department; City of Raleigh, a municipal
corporation organized under and pursuant to the laws of the
State of North Carolina, Defendants-Appellees.
 Nos. 93-2589, 94-1023.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 29, 1994.
Decided Nov. 29, 1994.
 
 ARGUED: Dorothy Virginia Kibler, Bailey & Dixon, Raleigh, NC, for appellants. Edward Hardy Lewis, Marcus W. Trathen, Tharrington, Smith & Hargrove, Raleigh, NC, for appellee. ON BRIEF: Kenyann G. Brown, Bailey & Dixon, Raleigh, NC, Thomas A. McCormick, Jr., City Atty., City of Raleigh, Raleigh, NC, for appellants. Roger W. Smith, Tharrington, Smith & Hargrove, Raleigh, NC, for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and WILKINSON, Circuit Judges.
 Affirmed in part; reversed in part; dismissed in part; and remanded by published opinion. Judge WILKINSON wrote the opinion, in which Justice POWELL and Judge MURNAGHAN joined.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 This case requires us to consider once again questions of qualified immunity under 42 U.S.C. Sec. 1983 raised in the context of a defendant police officer's motion for summary judgment. The district court denied the officer's assertions of immunity and allowed the case to proceed to trial on all plaintiff's claims. We affirm the trial court's denial of summary judgment to defendant on plaintiff's claim of excessive force, but we reverse and dismiss plaintiff's claims of unlawful detention and due process violations. We decline to pass upon the district court's discovery rulings, and with respect to those rulings, we dismiss defendant's appeal. We dismiss plaintiff's cross-appeal contesting the district court's denial of his motion for leave to amend his complaint to add a claim of municipal liability against the City of Raleigh.
 
 I.
 
 2
 This case arose out of a scuffle between a police officer and a citizen over a lost five dollar bill. Plaintiff Otha Rowland, Jr., is 37 years old, mildly retarded, and possesses a severe speech impediment. On November 5, 1991, at around 3:00 p.m., Rowland was waiting for a bus at the Moore Street Station in downtown Raleigh, North Carolina. Officer Billy M. Perry, the defendant in this action and a twenty-five year veteran of the City of Raleigh Police Department, was patrolling the bus station at that time. Officer Perry observed a woman at the station ticket window drop a five dollar bill. He then saw Rowland, who was standing nearby, walk over and pick up the money. Rowland pocketed the money and walked away without attempting to return it to the woman who had lost it, identified as Julia Campen. It appeared to Officer Perry that Mr. Rowland had seen Ms. Campen drop the money, but Rowland claims he had no idea to whom the money belonged when he picked it up.
 
 
 3
 The parties give somewhat conflicting accounts of subsequent events. Officer Perry immediately approached Mr. Rowland and told him to return the money to Ms. Campen. Rowland claims that he walked over to Campen and politely offered her the money but she declined, stating that it did not belong to her. According to Officer Perry, however, Mr. Rowland simply waved the money in the face of an openly distressed and tearful Ms. Campen. The officer did not hear the words, if any, that passed between them. A ticket window attendant who witnessed the interchange interpreted Mr. Rowland's actions as a crude proposition to Ms. Campen rather than an attempt to return the money. Campen, who is also slightly retarded, has offered conflicting affidavits on the details of this exchange.
 
 
 4
 Rowland then left the bus station, heading out toward Blount Street. After confirming that the money had not been returned to Campen, Officer Perry followed Rowland into the street. Perry claims that Rowland began to run and that he chased him to a nearby construction site. By contrast, Rowland maintains that he was merely standing at the corner of Blount and Hargett Streets when Officer Perry approached, and that he never ran from or was chased by the officer.
 
 
 5
 Both parties agree that at this point a struggle began and that Officer Perry ultimately used disabling force to gain control over Mr. Rowland. They differ, however, on who initiated the use of force and on the nature of resistance offered. Officer Perry asserts that Rowland shoved him in an attempt to escape, whereupon the officer grabbed Rowland by the collar. The use of force then escalated as Rowland's level of resistance increased. Both combatants fell to the ground, whereupon Officer Perry finally subdued the suspect. According to Officer Perry, no blows were inflicted during this scuffle. Again, Mr. Rowland portrays events quite differently. He contends that, without any provocation, Officer Perry grabbed his collar and jerked him around, yelling harshly as he did so. Frightened, Rowland instinctively tried to free himself. In response, Officer Perry punched him and threw him to the ground. Officer Perry then used a wrestling maneuver, throwing his weight against Rowland's right leg and wrenching the knee until it cracked. The struggle ceased as soon as Rowland's leg gave way.
 
 
 6
 During the struggle, Officer Perry called for backup. In response, Officer B.E. Myatt arrived on the scene, appearing soon after the fight ended. The officers placed Rowland in a squad car and briefly detained him while Officer Perry returned the five dollars to Ms. Campen. She confirmed that the money did belong to her but told Officer Perry she did not wish to press charges. Rowland was detained for a total of ten to fifteen minutes. He was never arrested.
 
 
 7
 Soon after the fight ended Rowland began to complain to the officers that his leg was "broken." Rowland contends that they ignored his complaints and also ignored his request for an ambulance, telling him to "go soak his leg." The officers dispute this account, maintaining that they offered to call a doctor but that Rowland declined. Moreover, Perry claims Rowland displayed no obvious signs of injury, either to his leg or elsewhere on his person. Rowland eventually limped, according to him, from the scene. He checked into a hospital the next day. It was later determined that the primary injury Mr. Rowland suffered to his right leg was a torn anterior cruciate ligament. He has had surgery twice, and now has a permanent partial disability.
 
 
 8
 Rowland originally filed claims against Officer Perry in both his official and individual capacities. He sought damages under 42 U.S.C. Sec. 1983 and various state law theories. In particular, Rowland brought Sec. 1983 claims of excessive force, unlawful detention, and due process violations, as well as state law claims of assault and battery and false arrest. The district court denied Perry qualified immunity on all claims against him in his individual capacity, and compelled the discovery of all requested personnel and medical records relating to him. The original claim against Perry in his official capacity, in reality a claim against the City, was dismissed as an inadequate respondeat superior allegation. The district court also denied plaintiff's motion to add to his complaint a claim of municipal liability against the City. Defendants brought an interlocutory appeal pursuant to Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), challenging the denial of qualified immunity and the grant of discovery. Plaintiff cross-appeals the denial of his motion to amend.
 
 II.
 
 9
 We shall first address Perry's various claims of qualified immunity. The basic rules of Sec. 1983 immunity are well known. Underlying the doctrine is a desire to avoid overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability. Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The concerns behind the immunity defense are especially salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances. The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).
 
 
 10
 The reasonableness inquiry is an objective one. Id. To gauge objective reasonableness, a court examines only the actions at issue and measures them against what a reasonable police officer would do under the circumstances. Graham v. Connor, 90 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). Subjective factors involving the officer's motives, intent, or propensities are not relevant. The objective nature of the inquiry is specifically intended to limit examination into an officer's subjective state of mind, and thereby enhance the chances of a speedy disposition of the case. Hunter v. Bryant, 502 U.S. 224, ---- - ----, 112 S.Ct. 534, 536-37, 116 L.Ed.2d 589 (1991).
 
 
 11
 Though it focuses on the objective facts, the immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident in question. Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir.1988). Such a perspective serves two purposes. First, using the officer's perception of the facts at the time limits second-guessing the reasonableness of actions with the benefit of 20/20 hindsight. Graham, 490 U.S. at 396, 109 S.Ct. at 1871-72. Second, using this perspective limits the need for decision-makers to sort through conflicting versions of the "actual" facts, and allows them to focus instead on what the police officer reasonably perceived. Gooden v. Howard County, Md., 954 F.2d 960, 965 (4th Cir.1992) (en banc). In sum, the officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are.
 
 A.
 
 12
 We first evaluate Officer Perry's assertion of qualified immunity with regard to plaintiff's claims of excessive force. Rowland has alleged Perry used a degree of force against him that violated the Fourth Amendment's protection against "unreasonable seizures." Graham, 490 U.S. at 394, 109 S.Ct. at 1871. Qualified immunity is available to officers as a defense against this type of excessive force claim. Slattery v. Rizzo, 939 F.2d 213, 215-16 (4th Cir.1991). The immunity test and the test on the merits both rely on an objective appraisal of the reasonableness of the force employed. The inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances. See Martin v. Gentile, 849 F.2d 863, 869 (4th Cir.1988). This test is not rigid or mechanical but depends on the "facts and circumstances of each particular case." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.
 
 
 13
 In his appraisal of the objective reasonableness of the force used against Rowland, Perry urges what amounts to a segmented view of the sequence of events. He emphasizes the resistance offered by Rowland during the struggle with Perry, separating this fact from the rest of the story. This resistance alone, he argues, is enough to make Perry reasonably believe that force was necessary. Furthermore, the defendant divides the use of force into two parts. First, Perry initially grabbed Rowland's collar in response to his attempts to flee. Second, Perry escalated the use of force in response to Rowland's resistance, culminating in the leg-twisting maneuver that finally subdued the suspect. Viewed in this way, each distinct act of force becomes reasonable given what Perry knew at each point in this progression.
 
 
 14
 This approach seems to us to miss the forest for the trees. The better way to assess the objective reasonableness of force is to view it in full context, with an eye toward the proportionality of the force in light of all the circumstances. Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness. This view is supported by the decision in Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 1700, 85 L.Ed.2d 1 (1985), which held that the question is "whether the totality of the circumstances justified a particular sort of ... seizure." See also Martin v. Malhoyt, 830 F.2d 237, 262 (D.C.Cir.1987) (evaluating "total conduct"). Graham v. Connor also frames the reasonableness determination in a larger perspective, evaluating all relevant factors rather than any one in isolation. These factors include "the severity of the [suspected] crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.
 
 
 15
 Viewed in this light, we cannot conclude that Perry was entitled to qualified immunity. When all the factors are considered in toto, it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill. There is no dispute here that the offense was a minor one, not as serious as pickpocketing or purse-snatching. At worst, Rowland picked up a five dollar bill that he knew had been lost by someone else. Rowland also claims that he offered to return the money to Ms. Campen, which, if true, would further mitigate the seriousness of the act. Second, Rowland posed no threat to the officer or anyone else. There never has been any suggestion that Rowland was armed or that Perry suspected he might be. Nor is there any real evidence that this relatively passive, retarded man was a danger to the larger, trained police officer. Finally, while there is some evidence that Rowland offered resistance, the facts on this point are disputed. Rowland maintains that he resisted only to the extent of instinctively trying to protect himself from the defendant's onslaught. Disputed versions of the facts alone are not enough to warrant denial of summary judgment in this context. Gooden, 954 F.2d at 965. Combined with such unfavorable Graham factors, however, we believe that a jury could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances known to him at the time. See Anderson, 483 U.S. at 641, 107 S.Ct. at 3039-40. The parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well.
 
 B.
 
 16
 Rowland's claim of an unreasonable detention is markedly weaker than his claim of excessive force. In order for qualified immunity to attach, it is not necessary that probable cause for an arrest actually exist. It is necessary only that the officer be objectively reasonable in believing that it is present. Torchinsky v. Siwinski, 942 F.2d 257, 260-61 (4th Cir.1991). What Officer Perry saw in the bus station is not contested. He saw Ms. Campen drop the money. He saw Rowland pick it up. He saw Rowland keep the money. Moreover, it appeared to Perry that Rowland knew the identity of the owner of the money when he took it. Rowland's own story confirms many of Perry's observations. From these facts alone, Perry had ample reason to believe that Rowland was committing the crime of misdemeanor larceny.[1] Perry also observed Rowland leave the station, which could be construed as flight, and confirmed with Ms. Campen that the money had not been returned before he gave chase. All the evidence supports the conclusion that Perry had an objectively reasonable belief in the existence of probable cause. Hence, this Sec. 1983 claim must be dismissed. Rowland's state law claim of false arrest necessarily fails as well.
 
 C.
 
 17
 We next address the claim that Rowland's due process rights were violated when the officers failed to provide him with medical care after his fight with Perry. The Due Process Clause of the Fourteenth Amendment requires public officials to provide medical care to pretrial detainees who are injured in the course of arrest. Martin, 849 F.2d at 870-71. Here, plaintiff argues that defendants owed him a duty to provide appropriate medical care but were "deliberately indifferent" to his injury, both ignoring his requests for aid and leaving him to stagger home as best he could on his wounded knee.
 
 
 18
 Although medical expenses may constitute an element of damages in a successful excessive force suit, they do not form the basis for a distinct and separate count here. The right to medical care for pretrial detainees under the Due Process Clause derives from the notion that the state's restriction of a person's ability to seek care on his own creates an affirmative obligation on the part of the state to provide such care. See DeShaney v. Winnebago County Dep't of Social Serv., 489 U.S. 189, 200, 109 S.Ct. 998, 1005-06, 103 L.Ed.2d 249 (1989). When no such restriction exists, the rationale for the duty falls away. Mere knowledge on the part of state officials of a person's injury, for example, does not give rise to an affirmative duty to act. Id. at 200. Here Rowland was never restricted to the extent that a duty of care arose. He was detained by the officers for a total of perhaps fifteen minutes, remained ambulatory and conscious the entire time, displayed no apparent serious injury, left the scene under his own power, and did not seek medical attention until the following day. We do not have before us a question of the right to medical care where a serious restriction of the victim's autonomy, such as a disabling injury or an extended detention, was inflicted. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). A party may not assert a due process right to medical care under these circumstances. The trial court's denial of summary judgment to defendant on this count is therefore reversed.[2]
 
 III.
 
 19
 On the final issue before us, we decline to exercise jurisdiction over plaintiff's cross-appeal of the denial of leave to amend the complaint. Mitchell v. Forsyth provides us with the authority to consider defendants' interlocutory appeal on the denial of qualified immunity. 472 U.S. at 530, 105 S.Ct. at 2817-18. Plaintiff urges us to exercise pendent appellate jurisdiction under 28 U.S.C. Sec. 1292 (1988) to consider his claim of error as well. Pendent jurisdiction allows courts of appeals, once they have entertained an interlocutory appeal under Mitchell, to consider other issues that overlap with the immunity question. O'Bar v. Pinion, 953 F.2d 74, 80 (4th Cir.1991). In most matters, however, "a self-imposed restraint must lead to a cautious exercise of that power, taking into consideration factors of judicial economy, injudicious intermeddling, and justice in the disposition." Id.
 
 
 20
 Far from being entwined with the qualified immunity issues raised in defendant's appeal, the subject of plaintiff's petition is an entirely separate claim against the City of Raleigh. We review qualified immunity questions on interlocutory appeal in order to further the goal of prompt resolution of claims against officials and because the entitlement is an immunity from suit which is effectively lost after trial. Mitchell, 472 U.S. at 526, 105 S.Ct. at 2815. Plaintiff's cross-appeal bears no apparent relationship to any of the purposes for which this interlocutory appeal was authorized, and, by increasing the burdens of litigation, may in fact be directly antithetical to the aims of Mitchell. The cross-appeal must therefore be dismissed.
 
 IV.
 
 21
 For the foregoing reasons, the judgment of the district court is affirmed in part and reversed in part. The cross-appeal is dismissed, and the case is remanded for proceedings consistent with this opinion.
 
 
 22
 AFFIRMED IN PART; REVERSED IN PART; DISMISSED IN PART; AND REMANDED.
 
 
 
 [1]
 In North Carolina, taking money with intent to deprive the owner when the identity of the owner is known constitutes misdemeanor larceny. N.C.Gen.Stat. Sec. 14-72(a) (1993)
 
 
 [2]
 We decline to pass upon the district court's discovery rulings, and with respect to those issues, we dismiss defendant's appeal