**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT EUGENE NADELIN,
Plaintiff-Appellant,

v.

DAVID M. MARTIN; DAVID PLYLER;

No. 97-6385

JAMES HUGHES; ERNEST BRADLEY;
CITY OF MONROE, NORTH CAROLINA,
Defendants-Appellees,

MIKE TOMBERLIN; UNION COUNTY,
Defendants.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Carl Horn, III, Chief Magistrate Judge.
(CA-95-428-3-H)

Submitted: October 20, 1998

Decided: November 19, 1998

Before MURNAGHAN, ERVIN, and LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael G. Gibson, D. Christopher Osborn, DEAN & GIBSON,
L.L.P., Charlotte, North Carolina, for Appellant. Anthony T. Lathrop,
Patrick H. Flanagan, CRANFILL, SUMMER & HARTZOG, L.L.P.,
Charlotte, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Robert Eugene Nadelin appeals from the portion of the magistrate judge's order[1] granting the Appellees, police officers, summary judgment as to his claims filed under 42 U.S.C.A. § 1983 (West Supp. 1998), against the officers in their individual capacities for use of excessive force in violation of the Fourth Amendment and as to his common law claims against the officers in their official and individual capacities for assault and battery.[2] Finding no reversible error, we affirm.

Nadelin filed this complaint against police officers David Martin, David Plyler, Mike Tomberlin, James Hughes, and Ernest Bradley, in their individual and official capacities.[3] He also filed the complaint against the City of Monroe and Union County. He alleged various constitutional violations as well as state law claims for assault and battery, malicious prosecution, and false imprisonment. All the claims against Tomberlin and Union County were voluntarily dismissed after the parties entered into a settlement agreement. The magistrate judge granted summary judgment to the remaining Defendants. The magistrate judge found that the police officers were entitled to qualified immunity with regard to Nadelin's Fourth Amendment excessive force claims and that the City of Monroe was not subject to liability. The magistrate judge further found that Nadelin's state law claims were without merit.

_____

[1] The parties consented to jurisdiction of the magistrate judge pursuant to 28 U.S.C.A. § 636(c) (West 1994 & Supp. 1998).

[2] We note that the remaining claims raised in Nadelin's complaint are deemed abandoned. See Rosenberger v. Rector & Visitors of University of Virginia, 18 F.3d 269, 276 (4th Cir. 1994).

[3] All the law enforcement officers, except for Tomberlin, were employed by the Monroe Public Safety Department. Tomberlin was an employee of the Union County Sheriff's Department.

This court reviews de novo a district court's grant of summary judgment. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is appropriate when a non-moving party fails to establish, by sworn evidence, an essential element of the case. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering motions for summary judgment, courts must view facts and inferences from the facts in the light most favorable to the party opposing the motion for summary judgment. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, when the evidence from the entire record could not lead a rational fact finder to find for the non-moving party, no genuine issue for trial exists, and summary judgment is appropriate. See id. at 587.

The evidence in the light most favorable to Nadelin established that in the late evening of October 30, 1992, and early morning of October 31, 1992, Nadelin owned and was present at the Excalibur Club in Monroe, North Carolina. Nadelin had arrived at the club at approximately 7:00 p.m., consumed three or four alcoholic drinks, and had stopped drinking at approximately 11:00 p.m. Kenny Helms was employed as the club manager and was present at the time in question. Nadelin played chess with various club patrons from approximately 10:30 p.m. until 1:30 a.m., when a verbal altercation took place inside the club between two patrons. Nadelin and Helms asked the two individuals who were fighting to leave and they complied.

At approximately 2:00 a.m., Helms was informed that the two patrons were again fighting in the parking lot. Helms directed that someone press the club's "panic button," which automatically calls the local police. Nadelin exited the club and noticed an individual lying on the pavement and bleeding. Club patrons would testify that they do not recall Nadelin showing signs of being intoxicated at this time.

Approximately fifteen minutes after the "panic button" had been pressed, several law enforcement vehicles and officers arrived at the club. The police officers observed approximately twenty to thirty people in the club's parking lot, one of whom was lying on the ground bleeding from a cut throat. The officers also noted that some of the people in the parking lot were engaged in fistfights. After breaking up

3

one of the fights, Officer Bradley determined that the injured man's throat had been cut by a knife and that the crowd was generally "loud and boisterous."

At some point in time after the police officers arrived at the club, Nadelin approached Officer Martin, a Captain with the Monroe Department of Public Safety, and inquired about whether an ambulance was coming to help the injured man in the parking lot. Nadelin would testify that Officer Martin's response included a statement to the effect that the police were not going to have"any of this shit here."

Nadelin and several club patrons would testify that when Nadelin approached Officer Martin a second time, Martin accused Nadelin of "changing his story" and proceeded to "prod, jab, and shove" Nadelin with his flashlight. Nadelin characterizes Captain Martin's conduct as unprovoked and inappropriate. Officer Martin would testify that Nadelin appeared intoxicated because he was talking loudly and had a strong odor of alcohol on his breath. Officer Martin would further testify that Nadelin "got right up in [his] face" as they were talking; Nadelin first grabbed Officer Martin's shoulder and then grabbed and wrestled away Officer Martin's flashlight before several officers approached to assist him. There is no dispute that it was at this point in time that Nadelin was physically restrained and placed under arrest.

Nadelin admits that he placed his hand on Officer Martin's shoulder and then grabbed Captain Martin's flashlight in order to prevent himself from being prodded and jabbed any further. Nadelin and several club patrons would testify that Nadelin released the flashlight when ordered to do so and placed his hands in the air to show that he had no weapons. They would further testify that Nadelin did not resist arrest, but was nevertheless thrown to the ground, hit and/or kicked, shot with pepper spray, and called a "son of a bitch" and an "asshole."

The police officers would testify that after Nadelin grabbed Captain Martin's shoulder, Martin ordered Nadelin to put his hand down. They would further testify that instead of complying with the order, Nadelin grabbed Officer Martin's flashlight and that this is why he was physically restrained and arrested. While Nadelin claims that he

4

did not hear the officers inform him that he was under arrest, he does not dispute that they did inform that he was under arrest. The officers would testify that Nadelin continued to struggle and resist arrest until a one-second shot of pepper spray successfully subdued him.

Because of his conduct, Nadelin was charged with resisting a public officer, assault on a government official, and being intoxicated and disruptive. Although initially Nadelin was convicted of all the charges in a bench trial, he appealed and was acquitted by a jury trial.

In the instant case, on appeal to this court, Nadelin claims that the district court erred in granting the Appellees summary judgment on the ground of qualified immunity. He contends that the facts taken in the light most favorable to him raise genuine issues of material fact as to whether the Appellees are entitled to qualified immunity on the § 1983 claims against them for the use of excessive force.

Nadelin has alleged that the Appellees used a degree of force against him that violated the Fourth Amendment's protection against unreasonable seizures. See Graham v. Connor, 490 U.S. 386, 394 (1989). Qualified immunity is available to these officers as a defense against this type of excessive force. See Slattery v. Rizzo, 939 F.2d 213, 215-16 (4th Cir. 1991). Qualified immunity shields government officials from § 1983 liability as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In an excessive force case, the specific inquiry "is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). "This test is not rigid or mechanical but depends on the `facts and circumstances of each particular case.'" Id. (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). Force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. See Graham, 490 U.S. at 397. Although the immunity inquiry focuses on the objective facts, it must be filtered through the lens of the officer's perceptions at the time of the incident in question. See Rowland, 41 F.3d at 173. Among the relevant factors in determining whether the officers applied reasonable force are whether the suspect posed a threat to the safety of the officers or oth-

5

ers and whether he was actively resisting arrest. See Graham, 490 U.S. at 396.

As the district court noted, the facts in this particular case involve precisely the kind of "street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances." Rowland, 41 F.3d at 172. Thus, the officers' actions in this case are shielded from civil liability because they did not violate clearly established constitutional rights. See id. When the police arrived at the Excalibur Club parking lot at approximately 2:00 a.m., they encountered a loud and boisterous crowd of twenty to thirty individuals, many of whom, including Nadelin, appeared to be at least partially intoxicated. One individual was lying on the ground severely injured appearing to have been cut in the throat with a knife. Other individuals were engaged in fistfights. The overall scene was one of confusion, and the crowd was difficult to control.

In the midst of this already tense and dangerous environment, Nadelin, who admits to have been drinking earlier that evening, questioned the police officers, either grabbed or put his hand on Captain Martin's shoulder, and undisputably wrestled away Martin's flashlight. Nadelin admits that when the police officers were trying to handcuff him, he heard someone discussing having a problem getting the handcuffs on his left hand. Although the police officers in this case may have handled the situation in a kinder and gentler manner, the actions of law enforcement officials are not to be assessed or evaluated with "the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Therefore, the district court correctly granted the police officers summary judgment on Nadelin's claim that they used excessive force in violation of the Fourth Amendment.

Nadelin also claims that the evidence raised a genuine issue of material fact as to his state law claim for assault and battery. "[A] civil action for damages for assault and battery is available at common law against one who, for the accomplishment of a legitimate purpose, such as justifiable arrest, uses force which is excessive under the given circumstances." Myrick v. Cooley, 371 S.E.2d 492, 496 (N.C. App. 1988) (citations omitted). Although the officer has discretion, within reasonable limits, to judge the degree of force required under the circumstances, "when there is substantial evidence of

6

unusual force, it is for the jury to decide whether the officer acted as a reasonable and prudent person or whether he acted arbitrarily and maliciously." <u>Todd v. Creech</u>, 209 S.E.2d 293, 295 (N.C. App. 1974). Additionally, an assault and battery need not be perpetuated with maliciousness, willfulness or wantonness, and actual physical injury need not be shown in order to recover. <u>See Myrick</u>, 371 S.E.2d at 496 (citations omitted). Even considering that the threshold for determining whether the limits of privileged force have been exceeded for purposes of liability under a normal tort action is lower than for a § 1983 action, <u>see Justice v. Dennis</u>, 834 F.2d 380, 382 (4th Cir. 1987), we find no substantial evidence of unusual force. As discussed thoroughly with regard to Nadelin's constitutional excessive force claim, there is no credible evidence that any of the officers acted unreasonably or used any type of force not necessitated by the circumstances.

Accordingly, we affirm the portion of the district court's order granting summary judgment to the Appellees. We dispense with oral argument because we previously granted Appellant's unopposed motion to submit the appeal on the briefs.

<u>AFFIRMED</u>