**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LAURA MANNS,
<u>Plaintiff-Appellee,</u>

v.

CATHY SMITH, in her individual and
official capacity,
<u>Defendant-Appellant,</u>                                      <u>No. 99-1372</u>

and

FRED MARSHALL, in his individual
and official capacity; CITY OF
CHARLESTON, WEST VIRGINIA,
<u>Defendants.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-97-878-2)

Argued: October 26, 1999

Decided: January 12, 2000

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John R. Teare, Jr., BOWLES, RICE, MCDAVID,
GRAFF & LOVE, P.L.L.C., Charleston, West Virginia, for Appel-

lant. Jason Eskwith Huber, FORMAN & CRANE, L.C., Charleston, West Virginia, for Appellee. **ON BRIEF:** Lisa Michelle Drabik, BOWLES, RICE, MCDAVID, GRAFF & LOVE, P.L.L.C., Charleston, West Virginia, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cathy Smith, a police officer for the city of Charleston, West Virginia, appeals the district court's denial of her motion for summary judgment on various federal and state claims filed against her by Laura Manns in the aftermath of Smith's arrest of Manns. Smith claims that her motion should have been granted because she was entitled to the defense of qualified immunity as to Manns's federal claims and to the defense of state statutory immunity as to Manns's state claims. The district court's order denying her motion for summary judgment determined that the pretrial record on the federal and state claims set forth genuine issues of material fact for trial that must be resolved before the court could determine whether Smith is protected by qualified and state statutory immunity. Because Smith asks us to resolve a dispute over whether or not certain conduct occurred, we dismiss Smith's interlocutory appeal for lack of jurisdiction.

I.

On the morning of November 12, 1996, Laura Manns, a seventy-six-year-old diabetic, had an appointment to visit her podiatrist in St. Albans, West Virginia. She left her home in Charleston and made her way to the city's Transit Mall to take a bus to St. Albans. In her deposition in this case, Manns testified that she put forty cents in the collection box as she boarded the bus.[1] The bus driver, Ronald Jones,

_____

[1] Because this case is only at the summary judgment stage in the district court, the facts are drawn not from trial testimony, but from the dis-

2

who came aboard to relieve the driver who was on board when Manns entered the bus, testified in his deposition that the first driver told him that Manns had paid no fare. Jones asked Manns to pay her fare, but Manns refused. Jones then told Manns that if she did not pay her fare or get off the bus that he would have to call the police. When Manns refused to pay and refused to leave her seat, Jones made good on his threat and called the police.

Officer Cathy Smith answered the call and met Jones outside the bus. After discussing the situation with Jones, Smith boarded the bus and told Manns that she needed to pay her fare or get off the bus. After some discussion, Manns voluntarily abandoned her seat and left the bus. After leaving the bus, however, Manns stood directly in front of the steps leading from the bus to the pavement. Because Manns was blocking Smith's exit from the bus, Smith asked her to move. Although Smith alleges that Manns first refused her request, Manns did voluntarily move in order to allow Smith to exit the bus.

The parties present very different versions of what happened next. Smith testified that she told Manns to go to the terminal's ticket office if Manns had a problem. Smith alleged that, as she turned to Jones to tell him she was leaving at that point, Manns struck her, making a short scratch on her neck. Jones also testified at his deposition that he saw Manns strike Smith. In addition, he testified that, while Smith and Manns were talking before Smith turned to him to say she was leaving, Manns pointed her finger at Smith's chest. Although his testimony is a bit unclear on this point, Jones appears to have asserted that Manns's finger touched Smith's clothing. The stories of two other witnesses dispute this account. Andrew Payne was a passenger on the bus who offered to pay Manns's fare after Smith asked Manns either to pay or leave. After Smith ordered him to back off and return to his seat, Payne continued to watch the incident unfold. Payne testified that he saw Manns wag her finger at Smith and that Manns's finger made slight physical contact with Smith. He said, however, that Manns shook her finger like "an old lady being contrary who had been taken off the bus . . . not offensive or threatening at all." (J.A.

_____

trict court's order denying summary judgment, the depositions of the parties and their witnesses, and the pleadings.

3

at 147.) He also testified that, after Manns touched Smith while wagging her finger, he never saw Manns strike Smith on the neck, although his testimony indicates that he may have turned away at the instant of the alleged punch. The other witness who disputes the accounts of Smith and Jones is Timothy Scott, a maintenance employee who was cleaning the Transit Mall at the time of the incident. Scott testified that he saw Manns leave the bus with Smith behind her. He said that he never saw Manns hit, push, or scratch Smith, but that he saw Smith grab Manns's arms from behind in an attempt to handcuff her.

Smith testified that after this first stage of the altercation, she informed Manns that she was under arrest. According to Smith, she tried to handcuff Manns from behind as Manns was swinging her arms, twisting away, and crying out. Smith testified that she dropped her handcuffs because Manns was hitting her, and she claims that she had to push Manns away in order to protect herself. She said that she then pulled out her pepper spray as Manns charged her and sprayed Manns in the face in order to subdue her.

Payne got off the bus in order to watch the incident unfold. He offers a different version of events, claiming that, after Manns wagged her finger at Smith, Smith grabbed Manns by the throat, slammed her against a wall, and picked her up off the ground. He testified that after Smith released her, Manns swung her arms lethargically in an attempt to get away. Payne claimed that, after moving a small distance away from Smith, Manns turned her back to the officer and was "trying to act as inconspicuous as possible." (J.A. at 155, 367.) Then, according to Payne, Smith grabbed Manns from behind, turned her around, and sprayed her in the face with pepper spray.

Unlike Payne, Scott did not report seeing Smith grab Manns by the throat, slam her against the wall, and pick her up off the ground. He testified that, although Manns was swinging her arms as she moved away from Smith, she was not swinging them at the officer; instead, she was making a paddling motion. His account also differs from Payne's in that he testified that Manns turned voluntarily to face Smith before Smith sprayed her.

4

After Smith sprayed Manns with pepper spray, other officers arrived on the scene. Manns was handcuffed and taken to the police station, where she was charged with battery, disorderly conduct, resisting arrest, and obstructing justice.**2**

Manns then filed this civil action in the Circuit Court of Kanawha County, West Virginia, against the City of Charleston, Officer Smith, and Police Chief Fred Marshall. Manns does not challenge the district court's characterization of her claims as a "violation of her rights under the West Virginia Constitution, her federal Fourth Amendment rights, [and] her civil rights pursuant to 42 U.S.C. §§ 1983 and 1988." (J.A. at 367.) Manns also asserted the following state tort claims: intentional and negligent infliction of emotional distress, false imprisonment, battery, and abuse of legal process. The defendants removed the case to federal court in the Southern District of West Virginia and then moved for summary judgment on all of Manns's claims. The motions by the City of Charleston and Chief Marshall were granted, leaving Smith as the sole remaining defendant.

Smith's motion for summary judgment was granted in part and denied in part. The district court granted summary judgment to Smith on Manns's state law claims of abuse of legal process and intentional and negligent infliction of emotional distress, finding that Manns had failed to produce any evidence on these claims. The court denied Smith's motion on the state law claims of battery and false imprisonment, however, finding that there were genuine issues of material fact regarding both claims and that the defense of state statutory immunity would not apply if the facts were as Manns alleged. The court also denied Smith summary judgment on Manns's federal claims that Smith had violated her Fourth Amendment right to be free from unlawful seizure and the use of excessive force. The court found that there were genuine issues of material fact regarding those claims and that the defense of qualified immunity would not apply if the facts

_____

**2** The Kanawha County Prosecutor's office later declined to prosecute Manns on these charges. We note that the district court, "[c]ognizant of prosecutorial discretion and the difference in proof standards in civil and criminal matters," properly declined to draw any legal conclusions from this fact. (J.A. at 367.)

5

were as Manns alleged. Following this partial denial of her motion for summary judgment, Smith filed this interlocutory appeal.**3**

II.

The first issue we must address is whether we have jurisdiction over this appeal of the district court's denial of summary judgment in regard to Manns's federal claims. Although collateral orders of district courts do not normally constitute appealable final decisions under 28 U.S.C.A. §1291 (West 1993), the Supreme Court has held that a district court's order denying a defendant's motion for summary judgment is an immediately appealable collateral order, i.e., a "final decision" under § 1291, when the defendant is a public official asserting qualified immunity and "the issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of `clearly established' law." Johnson v. Jones, 515 U.S. 304, 311 (1995) (restating the holding of Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)). The Johnson court held, however, that not all denials of summary judgment in the context of a qualified immunity defense are appealable:"[W]e hold that a defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a `genuine' issue of fact for trial." Id. at 319. Later, in Behrens v. Pelletier, 516 U.S. 299 (1996), the Court clarified its holding in Johnson:

> Johnson held, simply, that determinations of evidentiary sufficiency at summary judgment are not immediately appealable merely because they happen to arise in a qualified-immunity case; if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred, the question decided is not truly separable from

_____

**3** Manns does not cross-appeal the district court's grant of summary judgment in favor of the City of Charleston and Chief Marshall and their dismissal from the case. She also does not cross-appeal the district court's grant of summary judgment for Smith on the claims of abuse of legal process and intentional and negligent infliction of emotional distress

> the plaintiff's claim, and hence there is no final decision . . . . <u>Johnson</u> reaffirmed that summary judgment determinations are appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity -- typically, the issue whether the federal right allegedly infringed was clearly established.

<u>Id.</u> at 313 (internal citations and quotation marks omitted). In the aftermath of <u>Johnson</u> and <u>Behrens</u>, we have held that a district court's denial of a defendant's qualified immunity defense at the summary judgment stage is appealable if the defendant claims that "there was no violation of clearly established law accepting the facts as the district court viewed them"; no jurisdiction exists, however, over an appeal that involves the issue of whether or not certain conduct occurred. <u>Winfield v. Bass</u>, 106 F.3d 525, 530 (4th Cir. 1997).

Smith's appeal regarding Manns's federal claims asks us to resolve a dispute over whether or not certain conduct occurred; it does not ask us to apply the law of qualified immunity to the facts as the district court viewed them. She does not argue, for example, that her conduct, as alleged by Manns, does not constitute the violation of clearly established law. Instead, Smith argues that the district court erred when it decided that the facts surrounding the incident are disputed instead of undisputed. In other words, Smith asks us to resolve a question of mere "evidentiary sufficiency" involving "nothing more than whether the evidence could support a finding that particular conduct occurred." <u>Behrens</u>, 516 U.S. at 313. She argues that it is undisputed that Manns struck her -- or at least touched her-- and that this fact therefore allowed her to formulate the reasonable belief that she had probable cause to arrest Manns, i.e., to believe that Manns was committing or had committed a criminal offense. <u>See Coates v. Daugherty</u>, 973 F.2d 290, 293 (4th Cir. 1992) (stating the qualified immunity test for a warrantless arrest). Smith also argues that the facts regarding the amount of force she used in making the arrest are undisputed and that those facts show that the amount of force used was objectively reasonable in light of the circumstances. <u>See Rowland v. Perry</u>, 41 F.3d 167, 173 (4th Cir. 1994) (stating the qualified immunity test for claims of excessive force in making an arrest). She claims that, if her "undisputed" version of events is accepted, her conduct in making the arrest was in line with the City of Charleston's use

7

of force policy -- a policy on which she is allowed to rely for purposes of receiving qualified immunity. See Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir. 1994) ("We have held that officers are entitled to qualified immunity when they rely on standard operating procedures, if that reliance is reasonable.").

Our review of the district court's order denying Smith summary judgment as to Manns's federal claims indicates that the district court determined, after a review of the conflicting deposition testimony we have described above, that there were genuine issues of material fact regarding Manns's claims of unlawful seizure and excessive force that needed to be resolved before a decision on the qualified immunity defense could be made.**4** The court determined that the facts regarding Smith's conduct -- as well as Manns's-- before and after the arrest are hotly contested.**5** At this point, we simply do not have

_____

**4** This interlocutory appeal comes to us in different circumstances than the interlocutory appeal of the denial of summary judgment over which we exercised jurisdiction in Elliott v. Leavitt , 99 F.3d 640 (4th Cir. 1996). In that case, even though the district court had denied summary judgment to the defendant police officers claiming qualified immunity on the ground that material issues of fact existed, we found that there was no genuine dispute because the plaintiff had failed to present any facts that contradicted the version of events offered by the officers. See id. at 644. Here, Manns has presented evidence in the form of deposition testimony that materially contradicts Smith's version of events.

**5** As an aside, we note the somewhat disingenuous nature of Smith's assertion that the district court erred when it determined that there was a genuine issue of material fact as to whether Manns battered her. Smith argues that the undisputed facts show that there was unwelcome physical contact that required the legal inference that she could have reasonably believed that she had probable cause to arrest Manns for assault or battery. She claims that the facts are undisputed on this point even though Scott testified that he never saw Manns make physical contact with Smith. Of course, this kind of argument -- one that addresses the question of whether the evidence is sufficient to raise a genuine issue of material fact -- is one that we do not have jurisdiction to consider on an interlocutory appeal after the district court has denied a defendant's summary judgment motion because of the existence of a genuine issue of material fact regarding the defendant's conduct. Still, we observe that, in making her argument on this point, Manns either completely ignores the

8

jurisdiction to address Smith's argument that the evidence reviewed by the district court is insufficient to support a finding that Manns's version of events is correct. See Winfield, 106 F.3d at 529-30 ("[T]o the extent the appealing official seeks to argue the insufficiency of the evidence to raise a genuine issue of material fact-- for example, that the evidence presented was insufficient to support a conclusion that the official engaged in the particular conduct alleged -- we do not possess jurisdiction under § 1291 to consider the claim . . . .").

III.

Having dismissed Smith's interlocutory appeal in regard to Manns's federal claims, we dismiss it as well in regard to Manns's state claims.**6** Assuming that we can hear interlocutory appeals from denials of summary judgment in the context of state statutory immunity when the appeal turns on abstract issues of law, see Cantu v. Rocha, 77 F.3d 795, 804-05 (5th Cir. 1996), we dismiss Smith's appeal regarding Manns's state claims for the same reason we dismiss her appeal regarding Manns's federal claims: Just as she did regarding Manns's federal claims, Smith seeks to argue about whether or not the conduct underlying Manns's state claims occurred, see Collins v. Jordan, 110 F.3d 1363, 1376-77 (9th Cir. 1996) (dismissing, for lack of jurisdiction, appeal from denial of summary judgment on state

_____

testimony of Scott, claims that he did not observe events unfold when his testimony clearly indicates that he witnessed the entire incident, or claims that his testimony should not be given any weight because other witnesses observed the altercation from a closer distance. This last argument by Smith seems framed on her erroneous belief that, in Sigman v. Town of Chapel Hill, 161 F.3d 782 (4th Cir. 1998), we made the radical announcement that we would make credibility determinations when reviewing a summary judgment order. In Sigman , we reviewed the district court's grant -- not denial -- of summary judgment in favor of defendant police officers. We discounted the testimony of eyewitnesses in that case not because of credibility issues, but because their testimony was not "material to the question of whether[the defendants were] entitled to the protections of qualified immunity in the particular circumstances of this case." Id. at 788.

**6** Smith argues that, under her version of the facts, Manns's state law claims are barred by W. Va. Code § 29-12A-5(b)(2) (1999).

9

claims in face of defense of state statutory immunity when denial turned on need to resolve disputed issues of material fact); Tamez v. City of San Marcos, 62 F.3d 123, 125 (5th Cir. 1995) (same).

IV.

For the foregoing reasons, we dismiss Smith's appeal.

DISMISSED

10