**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1588**

---

KA'LAH MARTIN, a/k/a Kalah Martin,

       Plaintiff – Appellee,

    v.

TRAVIS SHORT, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; KYLE GABBY, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; JEREMIAH HARRELSON, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department,

       Defendants – Appellants,

    and

GREGORY SEABOLT, in his official capacity as Sheriff of the Randolph County Sheriff's Department; STEVEN W. MYERS, both individually and in his official capacity as internal Affairs Deputy with the Randolph County Sheriff's Department; EDWARD SLAFKY, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; TRAVIS COX, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; ERIC WEAVER, In his official capacity as deputy with the Randolph County Sheriff's Department; STEVE SHAWVER, SR., both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; JOHN DOE A, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department; JOHN DOE B, both individually and in his official capacity as deputy with the Randolph County Sheriff's Department,

       Defendants.

---

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. L. Patrick Auld, United States Magistrate Judge. (1:21-cv-00906-LPA)

---

ARGUED:  May 7, 2024                                        Decided:  June 27, 2024

---

Before DIAZ, Chief Judge, and WILKINSON and KING, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge King wrote the opinion, in which Chief Judge Diaz and Judge Wilkinson joined.

---

**ARGUED:**  Michael A. Ingersoll, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellants.  Taylor Morgan Dant, DANT LAW PLLC, Graham, North Carolina, for Appellee.  **ON BRIEF:**  Sean F. Perrin, WOMBLE BOND DICKINSON (US) LLP, Charlotte, North Carolina, for Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

2

KING, Circuit Judge:

This interlocutory appeal from the Middle District of North Carolina concerns the denial of qualified immunity to defendants-appellants Travis Short, Kyle Gabby, and Jeremiah Harrelson — deputies with the Randolph County Sheriff's Department — on plaintiff Ka'Lah Martin's 42 U.S.C. § 1983 excessive force claim. By its Memorandum Opinion and Order of April 2023, the district court rejected the appellants' qualified immunity contentions and denied them summary judgment, thereby ruling that the § 1983 excessive force claim shall proceed to a jury trial against the appellants in their individual capacities. *See Martin v. Seabolt*, No. 1:21-cv-00906 (M.D.N.C. Apr. 25, 2023), ECF No. 35 (the "Opinion").[1] As explained herein, we affirm the district court.

## I.

Following a February 2019 traffic stop that turned violent and culminated in her arrest, plaintiff Martin initiated this civil action in November 2021, asserting numerous state and federal claims against a multitude of defendants. Pertinent to this interlocutory appeal, the operative Amended Complaint of June 2022 alleges in the § 1983 excessive force claim that appellants Short, Gabby, and Harrelson contravened Martin's Fourth Amendment protection against an unreasonable seizure. After the close of discovery and

---

[1] The district court proceedings are being conducted by a magistrate judge on consent of the parties. *See* 28 U.S.C. § 636(c).

3

as part of a broader motion for summary judgment of October 2022, the appellants sought

qualified immunity on the § 1983 excessive force claim.

In resolving the appellants' summary judgment request for qualified immunity by

its Opinion of April 2023, the district court began by carefully reciting the relevant facts,

including these:

> The record reflects that [plaintiff Martin] drove a Toyota sedan on February 28, 2019. [Martin had] previously purchased the vehicle for $600, and the vehicle had some issues, i.e., the driver side door and window did not open, and neither did the front passenger side door or window. The left rear passenger door and window also did not work; thus, to operate the vehicle, [Martin] had to enter through the right rear passenger door, then climb between the two front seats into the driver seat.

> During the day on February 28, law enforcement officers in Montgomery County, North Carolina pulled [plaintiff Martin] over and confiscated her license plate due to the belief that [Martin] lacked motor vehicle insurance. Thereafter, [Martin] continued to drive. That same evening, at approximately 6:38pm, [appellant] Short (with the Randolph County Sheriff's Office) attempted to conduct a traffic stop of [Martin] for failure to display a registration plate.

> According to [plaintiff Martin], when [appellant] Short attempted the traffic stop, [Martin] initially did not pull over due to construction on the shoulder of the highway. [Martin], instead, slowed her vehicle from 65 miles-per-hour to approximately 30 miles-per-hour and turned on her vehicle's hazard lights. Citing the fact that it was dark and that the rain was pouring down, [Martin] maintained she inadvertently passed two exits on the highway. As [Martin] continued along the highway, . . . Short advised other officers over his radio that he was pursuing a vehicle, and other officers, including [appellants] Gabby [and] Harrelson, . . . responded by positioning their vehicles at the next exit on the highway (after the two exits [Martin] had passed by that point), the McDowell Road exit.

> Plaintiff [Martin] eventually exited the highway towards McDowell Road, then pulled over on the exit ramp. After [Martin's] vehicle came to a stop, [appellants] Short, . . . Gabby, and Harrelson approached the vehicle with their guns drawn. . . . Short . . . and Gabby approached the driver side door; . . . Harrelson approached the front passenger side door. . . . Short . . .

4

and Gabby ordered [Martin] to show her hands and exit the vehicle, to which [Martin] replied that she could not open the driver side door or roll the window down.

The record contains conflicting evidence as to whether [plaintiff Martin] kept her hands in view of [the appellants]. The record does reflect, though, that at least some [of the appellants] could hear [Martin] communicate that she could not open her car door or window.

After [appellant] Short . . . unsuccessfully tried to open [plaintiff Martin's] driver side door from the outside, [he] busted out the driver's side window. Once . . . Short . . . broke the driver's side window, [appellant] Harrelson took out his duty issued asp[2] and struck the passenger side window, breaking it, and then attempted to open the passenger side door from the inside so that he could assist . . . Short [in] plac[ing] the driver under arrest. . . . Short . . . then pulled [Martin] out of the car through the broken driver's side window with the assistance of [appellant] Gabby. As . . . Harrelson was entering the vehicle through the passenger side window, Short . . . and Gabby already had [Martin] through the window and out of the vehicle. . . . Short . . . and Gabby then placed [Martin] face down on the roadway to effect an arrest. By the time . . . Harrelson came around the vehicle, . . . Short . . . and Gabby had [Martin] in handcuffs [on] the ground.

*See* Opinion 3-8 (original footnotes, citations, internal quotation marks, and original alterations omitted).

Among the additional facts recounted in the Opinion was plaintiff Martin's statement "that an officer 'grabbed me out [of the vehicle] by my hair and my arm and just pulled me.'" *See* Opinion 8 (citation and original alterations omitted). Additionally, the Opinion acknowledged the appellants' calculation that Martin had driven "a total of 5.7

---

[2] The term "asp" appears to be a colloquial reference to a telescopic police baton, and although the term is derived from the original manufacturer — Armament Systems and Procedures, Inc. — the term is used to refer to telescopic police batons generally. *See* Peter R. Heyne, *Hit Points: Regulating Less-Than-Lethal Weapons*, 95 Wis. Law. 26, 29 (July-Aug. 2022).

miles after [appellant] Short initiated his patrol car's emergency lights." *Id.* at 5 (citation, internal quotation marks, and original alterations omitted). The Opinion also discussed evidence that, several days after her encounter with the appellants, Martin "went to the hospital to address injuries stemming from her arrest" and "received a band-aid for [a cut on] her knee" plus "possibly Ibuprofen and muscle relaxers." *Id.* at 9 (citations and internal quotation marks omitted).[3]

Following its factual recitation, the district court turned in the Opinion to its analysis of the appellants' summary judgment request for qualified immunity on the § 1983 excessive force claim. *See* Opinion 25-42. In that analysis, the court addressed, first, the question of whether the appellants contravened plaintiff Martin's Fourth Amendment right against an unreasonable seizure, and, second, the question of whether that right was clearly established at the time of her arrest. *See Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 667 (4th Cir. 2020) (explaining that, "[t]o determine whether qualified immunity applies, we conduct a two-step inquiry, in either order: (1) whether a constitutional violation occurred; and (2) whether the right was clearly established at the time of the violation").

Of significance to each question, the district court highlighted "a number of disputed facts that directly bear on the reasonableness of the force [the appellants] used." *See*

---

[3] The Opinion further related that, following her arrest by the appellants, plaintiff Martin was charged with "(1) fleeing or eluding arrest, (2) operating a vehicle with no insurance, and (3) failing to display a registration plate on her vehicle." *See* Opinion 8. "Ultimately," however, "state prosecutors voluntarily dismissed all the charges against [Martin]." *Id.* at 9.

6

Opinion 38-39. The court specified that "genuine issues of material fact abound, including as to the severity of the crime at issue, whether and to what extent [plaintiff Martin] posed an immediate threat to [the appellants or other officers], and whether [Martin] '[was] actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 37 (fourth alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989), and referencing the familiar "*Graham* factors" for assessing the objective reasonableness of a particular use of force). As identified in the Opinion, the "disputed facts include, among others":

> (1) whether [Martin] kept her hands in view of [the appellants] after they approached her vehicle, (2) which [of the appellants] heard [Martin] state that she could not open her vehicle's front doors or windows, (3) how much time passed after [Martin] pulled over before [the appellants] broke the vehicle's front windows, and (4) whether [the appellants] first attempted to open [Martin's] door from the inside after breaking the window.

*Id.* at 39.

In light of the many disputed facts, the district court concluded that it could not rule that the appellants are entitled to summary judgment for having not contravened plaintiff Martin's Fourth Amendment right, *see* Opinion 25-37, nor could it otherwise grant the appellants qualified immunity on the ground that the right allegedly violated was not clearly established, *id.* at 37-42. Accordingly, the court ordered that Martin's "excessive force under Section 1983 claim shall proceed [to a jury trial] against [appellants] Short, Gabby, and Harrelson in their individual capacities." *Id.* at 67.

7

II.

The appellants timely noted this interlocutory appeal, in which the collateral order doctrine accords us "jurisdiction to review [the district court's] denial of qualified immunity at summary judgment only to the extent that the court's decision turned on an issue of law." *See Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016) (internal quotation marks omitted). Consequently, "we may consider only the facts as the district court viewed them as well as any additional undisputed facts, and our review is limited to the legal question of whether the court correctly denied summary judgment on those facts." *Id.* (internal quotation marks omitted).

Within the limits of our jurisdiction, the appellants contend that we can view the district court's factual recitation in the light most favorable to plaintiff Martin and yet rule that the appellants are entitled to qualified immunity as a matter of law. We are not at all persuaded, however, that the appellants merit a qualified immunity award even viewing the facts in the manner most helpful to Martin.

In so saying, we underscore that the appellants present the district court's factual recitation in a way that actually favors them over plaintiff Martin in several respects. For example, the appellants would have us rule that their use of force was reasonable based on the evidence that Martin continued to drive for 5.7 miles after appellant Short initiated his patrol car's emergency lights and that Martin needed no more than a band-aid, Ibuprofen, and muscle relaxers for injuries sustained during her arrest. Concomitantly, the appellants would have us diminish and outright disregard evidence tending to refute any threat that otherwise might be inferred from Martin's continued driving (such as the evidence that

8

Martin slowed her vehicle significantly and turned on the vehicle's hazard lights), as well as evidence suggesting that any lack of more serious injuries was simply a matter of luck (i.e., the evidence that the appellants busted out the driver's side window, forcibly pulled Martin through the broken window by her hair and arm, and then placed her face down on the roadway).

At bottom, when we view the facts in the light that is truly most favorable to plaintiff Martin, we cannot conclude either that the appellants did not contravene her Fourth Amendment right against an unreasonable seizure or that the right was not clearly established at the time of her arrest. Indeed, we are convinced that — when, as Martin alleges happened, the appellants violently busted out the windows of her vehicle and yanked her through the broken driver's side window by her hair and arm — every reasonable officer would have understood that what he was doing was unlawful, whether by then-existing precedent or by the otherwise obvious illegality of that outrageous conduct. *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018). We therefore affirm the district court's denial of the appellants' summary judgment request for qualified immunity on Martin's § 1983 excessive force claim.[4]

---

[4] In addition to the district court's denial of qualified immunity on the § 1983 excessive force claim, the appellants contest the court's related denial of public officers' immunity on plaintiff Martin's parallel North Carolina state law claim of assault and battery. *See* Opinion 60 (adhering to the principle that "[w]hen a court denies summary judgment as to the Section 1983 excessive force claim, '[t]he parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well'" (second alteration in original) (quoting *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994))); *see also Bailey v. Kennedy*, 349 F.3d 731, 738-39 (4th Cir. 2003) (recognizing that we possess jurisdiction under the collateral order doctrine to review the (Continued)

9

III.

Pursuant to the foregoing, we reject the contentions raised by appellants Short,

Gabby, and Harrelson in this interlocutory appeal, and we affirm the district court.

*AFFIRMED*

---

denial of public officers' immunity on a North Carolina state law claim). Having affirmed the denial of qualified immunity on the § 1983 claim, we affirm the denial of public officers' immunity on the state law claim as well.