47 F.3d 1165
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Frank L. MACK, Plaintiff-Appellant,
v.
William R. REDDICK, individually and as an officer of the
City of Charlotte Police Department; Dewey R. Stone, Chief,
City of Charlotte Police Department; City of Charlotte,
North Carolina, Defendants-Appellees.
 No. 94-6677.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1994.
Decided Feb. 17, 1995.
 
 ARGUED: Kenneth Leroi Harris, HARRIS & DRUMMOND, Charlotte, NC, for appellant. Grady Michael Barnhill, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, NCa, for appellees. ON BRIEF: Mark P. Henriques, WOMBLE, CARLYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, NC; Stephanie H. Webster, Senior Police Attorney, CITY OF CHARLOTTE, Charlotte, NC, for appellees.
 Before WILKINSON and MOTZ, Circuit Judges, and MESSITTE, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this excessive force case, we affirm the grant of summary judgment to the defendants--the City of Charlotte, its chief of police, and one of its police officers.
 
 
 2
 This case grows out of events that occurred on the evening of May 1, 1992. At approximately 10:30 p.m., Officer William Reddick of the Charlotte Police Department, "responded to a call that a black male dressed in black was firing a weapon at or near the Magnolia Garden Apartments complex." Upon arriving at the apartment complex, Officer Reddick confirmed this report with the assistant manager. Officer Reddick then "observed several black males on the back porch" of an apartment, among them plaintiff, Frank L. Mack, and James Foster (also known as "Small Change" or "Half Change"). Mack, who "was wearing dark clothes," "yelled to Half Change ... 'I didn't ask you to do that, I asked you to leave,' " and then proceeded to follow Foster onto the porch carrying a gun. It is undisputed that both Foster and Mack were intoxicated.
 
 
 3
 Officer Reddick contends that "Mack was threatening Foster" and that "Foster was belligerent and yelling obscenities back at Mack." In response to this situation, Reddick, who was "dressed in police uniform" asserts that he "stepped out into a well-lit area," where "[t]here was ample street lighting ... to see the individuals on the balcony and for them to see me," "looked directly at Mack and yelled, 'Police! Drop the gun!' five or six times." According to Reddick, Mack appeared to disregard this command, "turned back towards Foster and raised the gun." Reddick contends that he waited to fire until "Mack [had] leveled the gun off at Foster," and then fired several times, wounding Mack in his right arm, right hip, and right knee. The affidavits of two eyewitnesses, Antonio Jackson Harris and Roderick Drakeford, corroborate Reddick's account.
 
 
 4
 Mack, who admits he was drinking on the night in question, asserts that events unfolded somewhat differently. He contends that he was shot "[w]ithin a few seconds of ... exiting the screen door;" that "[a]t no time before [the] shooting did any police officer identify himself and request that I drop the gun;" and that "[a]t no time before the shooting did I raise the gun and point it at Half Change or anyone else." Foster's affidavit corroborates Mack's account.
 
 
 5
 Mack sued Reddick, Charlotte police chief, Dewey R. Stone, and the City of Charlotte, alleging various constitutional and state law claims, including Reddick's use of excessive force in violation of Mack's constitutional rights. The magistrate judge recommended that defendants' motion for summary judgment be granted. After "an independent and thorough review" of that recommendation and "a de novo review of the record," the district court found the recommendation "correct in its entirety" and granted summary judgment for the defendants.
 
 
 6
 The crux of Mack's claim on appeal is that the factual disputes set forth above are "material and genuine" and so prevent the grant of summary judgment to the defendants. This argument ignores the well-established legal principles governing this case. The Supreme Court has held: "Where the officer has probable cause to believe that the suspect poses a threat of physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force." Tennessee v. Garner, 471 U.S. 1, 11 (1985).
 
 
 7
 The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation.
 
 
 8
 Graham v. Connor, 490 U.S. 386, 396-397 (1989).[1]
 
 
 9
 Mack argues that there are material issues of fact as to whether Officer Reddick used excessive force, is entitled to qualified immunity, acted pursuant to an official policy or custom, and committed state law assault and battery; and as to whether Chief Stone and the City are liable for negligent hiring and supervision. All of Mack's arguments are contingent on proving that Reddick acted unreasonably.
 
 
 10
 Even if we accept as true Mack's assertions that: (1) he "never threatened Officer Reddick or anyone else with the gun he held by the handle at the time he was shot," and "never pointed the gun at Reddick or anyone else;" (2) Officer "Reddick had no information suggesting" that Mack "had committed a crime or conveyed threats other than a call Reddick received that a black man had been shooting a gun;" and (3) Reddick did not warn Mack before firing, Reddick's actions were not objectively unreasonable, and so defendants are entitled to summary judgment. This is so because it is undisputed that: (1) Reddick had been telephoned to investigate a report that shots had been fired at the apartment complex; (2) Reddick verified the report with the apartment's assistant manager; (3) Reddick observed an altercation between two men on the balcony who were belligerent and appeared intoxicated; and (4) one of the men was holding a gun. These undisputed facts provided an objectively reasonable basis for Reddick's use of force.
 
 
 11
 In McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir.), cert. denied, 115 S.Ct. 581 (1994), and Slattery v. Rizzo, 939 F.2d 213, 214-215 (4th Cir.1991), we affirmed the grant of summary judgment in favor of police officers who shot suspects under what, in retrospect, turned out to be mistaken beliefs that the officers themselves were about to be shot. In the present case, even in retrospect, it is not clear that Officer Reddick made a mistake. The record leaves us uncertain whether Mack would, in fact, have shot Foster had Officer Reddick not intervened. Clearly, if a court cannot state, "with the benefit of 20/20 hindsight," Rowland 41 F.3d at 173, that an officer's actions were unreasonable, those actions made "in the face of volatile and changing circumstances," id. at 172, were not unreasonable.[2]
 
 
 12
 Our conclusion that Reddick acted reasonably is dispositive of all claims against all defendants. For example, in the absence of any constitutional violation by Officer Reddick, Mack's claims against the City and Chief Stone for improper "policies and customs" fail. See Belcher v. Oliver, 898 F.2d 32, 36 (4th Cir.1990). Similarly, because Reddick's actions constituted a reasonable use of force, Mack's state law claim for assault and battery also fails as a matter of law. See N.C. Gen.Stat. Sec. 15A-401(d).
 
 
 13
 Accordingly, the district court's order granting defendants' motion for summary judgment is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Although not critical to resolution of this case, we also note that summary judgment on the basis of qualified immunity is proper notwithstanding factual disputes, if those disputes do not call into question the reasonableness of an officer's perceptions. See Gooden v. Howard County, Md., 954 F.2d 960 (4th Cir.1992) (en banc). And although "[t]he immunity test and the test on the merits [in an excessive force case] both rely on an objective appraisal of the reasonableness of the force employed," Rowland v. Perry, 41 F.3d 167, 173 (4th Cir.1994), "qualified immunity affords government officials greater protection than a simple defense on the merits." Slattery v. Rizzo, 939 F.2d 213, 216 (4th Cir.1991). "The inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances," as he reasonably perceived them. Rowland, 41 F.3d at 173
 
 
 [2]
 This is so, even if we assume that Reddick did not warn Mack before firing. See McLenagan, 27 F.3d at 1007 ("We decline ... to fashion an inflexible rule that, in order to avoid civil liability, an officer must always warn his suspect before firing")