Shawnn CUNNINGHAM, Plaintiff,

v.

Laura HAMILTON, et al., Defendants.

No. CIV.A.3:02–CV–900.

United States District Court,
E.D. Virginia,
Richmond Division.

April 25, 2003.

---

458

---

## MEMORANDUM OPINION

HUDSON, District Judge.

### (Motion for Qualified Immunity and Summary Judgment)

This is a case brought under the Civil Rights Act, Title 42 U.S.C. § 1983, for the use of excessive force by officers of the Henrico County Police Department in violation of the Plaintiff's Fourth Amendment rights. The matter is before the Court on Defendants' Motion for Summary Judgment. Both sides have filed detailed memoranda of law and have been afforded an opportunity for oral argument.

The underlying incident occurred shortly after midnight on New Year's Day 2000. The Henrico County Police Department had received a citizen's complaint that firearms were being discharged in a residential neighborhood. The defendant officers, Laura Hamilton ("Officer Hamilton") and

R.J. Clark ("Officer Clark"), were dispatched to 400 Hickorywood Circle, a townhouse unit located in the Ironwood Townhouses residential community. En route, Officer Hamilton was advised by the police dispatcher that one individual at the scene had a long gun, another had a handgun, and a third was going in and out of the house supplying the others with ammunition. Both defendant officers believed that the neighborhood to which they were responding was a high crime area. As they individually approached 400 Hickorywood Circle, each officer heard gunfire.

The officers continued to hear gunfire as they exited their vehicles and approached 400 Hickorywood Circle. Officer Hamilton heard gunshots being fired from the backyard of the townhouse. Officer Clark also heard gunshots being fired as he approached the backyard from the other side. Through missing boards in the backyard fence, Officer Hamilton observed two men firing weapons, one a long gun and the other a handgun. Officer Hamilton took a position in the fenced backyard, near a rear, open gate. Officer Clark positioned himself on top of an air conditioning unit near the backyard fence of an adjoining property. The backyard was illuminated by a porch light.

During a pause in the gunfire, the plaintiff, Shawnn Cunningham ("Cunningham"), walked alone into the backyard holding a pistol in his hand. He fired several rounds from the handgun into the air, which the officers observed. When the shooting ended, Officer Hamilton, in uniform, stepped through the backyard gate and shouted to the plaintiff, "Henrico Police—Drop your gun."

Although the foregoing facts appear to be undisputed, the events which followed are controverted. Officer Hamilton recalls the plaintiff seeking cover behind a Christmas tree and pointing his firearm in her

direction. Hamilton remembers that both she and Officer Clark continued to shout at the plaintiff, "Henrico Police—Drop your gun."

The plaintiff, on the other hand, recalls hearing a female's voice screaming or yelling from behind, but he could not discern what she was saying. Plaintiff remembers pivoting to the right and turning his whole body to face Officer Hamilton. He observed Officer Hamilton standing next to the gate pointing a gun at him. Plaintiff admits that he was still holding the pistol in his hand, but adamantly denies pointing the weapon at Officer Hamilton or seeking cover behind the Christmas tree. Plaintiff was fully aware that Hamilton was a police officer. Plaintiff said nothing in response to the officers, but did not drop his weapon as directed.

When Cunningham declined to surrender his weapon, Officer Hamilton believed she was in imminent danger of death or serious bodily injury and fired two shots at him. Officer Clark, who was positioned directly in front of Hamilton, heard the shots fired and observed Plaintiff still holding the handgun. Believing that Officer Hamilton was in imminent danger of death or serious bodily injury, Officer Clark fired five rounds at Cunningham. As a result of the gunshot wounds, Plaintiff sustained serious injury. This lawsuit followed.

The defendant officers contend that the use of their weapons was justified and objectively reasonable, and that they are therefore entitled to qualified immunity and to summary judgment on the assault and battery claim. Plaintiff argues that there are material facts in dispute precluding qualified immunity and barring summary judgment. Plaintiff appears to misapply the controlling standard of objective reasonableness.

■ Where a plaintiff alleges that a police officer has unconstitutionally used deadly force, the officer's actions and judgment are measured by a standard of objective reasonableness. *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

■ Within the appropriate analytical framework, the Court deciding a plea of qualified immunity must focus on what a reasonable officer "on the scene" would have done. The Court must direct its attention to the facts as perceived by the police officer and whether the officer acted reasonably when confronted with the facts at hand. "The calculations of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain and rapidly evolving, about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. Summary judgment on the basis of qualified immunity is proper, notwithstanding factual disputes, if those disputes do not call into question the reasonableness of an officer's perceptions. *Gooden v. Howard County,* 954 F.2d 960, 965 (4th Cir.1992) (*en banc* ). *See also, Sigman v. Town of Chapel Hill,* 161 F.3d 782, 787–88 (4th Cir.1998).

If a reasonable officer could have found probable cause to believe that Cunningham presented a serious threat of personal harm at the time the officers fired their weapons, then as a matter of law the defendants are entitled to qualified immunity. *Slattery v. Rizzo,* 939 F.2d 213, 216 (4th Cir.1991).

The United States Supreme Court recently clarified the analytical framework to be used in determining a defendant's entitlement to qualified immunity in excessive force cases. The analysis must be conducted in two steps, which must be undertaken in the appropriate sequence. *See Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). Ini-

tially, the Court must determine whether "[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show that the officer's conduct violated a constitutional right." If Plaintiff cannot surmount this hurdle, the analysis ends and the defendant is entitled to qualified immunity. *Id.* at 2156.

If the Court finds that the officer's conduct violated a constitutional right, the next sequential step is to ask whether the right was clearly established at the time of the events at issue. This inquiry must be made "in light of the specific context of the case, not as a broad general proposition." *Id.* If the right was not clearly established in the specific context of the case—that is, if it was not "clear to a reasonable officer" that the conduct in which he allegedly engaged "was unlawful in the situation he confronted"—then the law affords the officer immunity from suit. *Clem v. Corbeau,* 284 F.3d 543, 549 (4th Cir.2002) (citations omitted).

 Therefore, employing the *Saucier* test, the Court must initially decide whether taken in the light most favorable to the party asserting the injury, i.e., Cunningham, the facts alleged show that the officer's conduct violated a constitutional right. Clearly, the Fourth Amendment prohibits law enforcement officers from using excessive force against individuals. *See Graham,* 490 U.S. at 396–97, 109 S.Ct. 1865. Whether an officer has used excessive force is judged by a standard of objective reasonableness. *Id.* In determining whether excessive force has been employed, courts should not inquire into an officer's motives, intentions or tendencies but should ask "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996). As the United States Supreme Court pointed out in *Bell v. Wolfish,* 441 U.S.

520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the test of reasonableness is "not capable of precise definition or mechanical application." The analysis requires careful attention to the facts and circumstances of each particular case. *Graham,* 490 U.S. at 396, 109 S.Ct. 1865. Deadly force is justified only where a reasonable officer would have "sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." *Elliott,* 99 F.3d at 642. The Constitution does not permit the use of deadly force against a person who poses no threat to the officer and no threat to others. *Tennessee v. Garner,* 471 U.S. 1, 9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

In determining whether the totality of the circumstances in the immediate case justified the use of deadly force, the Court must review the facts in the light most favorable to the plaintiff. The analysis requires a careful parsing to eliminate material facts genuinely in dispute. When the basis for the defendant officers' actions are impressionistic, the Court will employ a test of reasonableness, as articulated in the cases discussed above.

 It is beyond dispute that Officers Hamilton and Clark were dispatched on the night in question to a report of illegal gunfire in an area which they, as experienced officers, believed was a high crime area. The police dispatcher advised the officers that one individual had a long gun and the other a handgun. When the officers arrived separately at the scene, they immediately heard gunfire from the backyard of a townhouse. The discharge of a firearm in this residential area was clearly unlawful. As the officers approached the backyard of the townhouse, the gunfire continued. In the rear yard, both officers personally observed the plaintiff discharging a handgun several times into the air. At some point, Officer Hamilton, in uni-

form, stepped through the open, backyard gate and advised the plaintiff, "Henrico Police—Drop your gun." According to Hamilton, she uttered these words several times, then drew her firearm and pointed it toward the plaintiff.

Cunningham pivoted to the right and turned his full body to face Officer Hamilton. He did not drop the handgun. Officers Hamilton and Clark again informed him "Henrico Police—Drop your gun." Cunningham failed to drop his weapon and said nothing in response to the officers' commands.

Believing she was in imminent danger of death or serious bodily injury, Officer Hamilton discharged her firearm at Cunningham. Immediately after hearing a weapon fired, Officer Clark observed him with a firearm in his hand. Fearful that Officer Hamilton had been shot, or was in danger of being wounded, Clark discharged his firearm, striking Plaintiff.

Whether the defendants' conduct violated a constitutional right of the plaintiff turns on whether a reasonable police officer in the defendants' position, would have sound reason to believe that Plaintiff was armed or otherwise sufficiently dangerous to justify the use of deadly force. Although it is unfortunate that Plaintiff was seriously injured, the Court believes that the defendant officers' actions were reasonable in the context of the totality of the circumstances. It is important to keep in mind that courts "will not second guess the split-second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where an action could have resulted in death or serious injury to the officer and others." See McLenagan v. Karnes, 27 F.3d 1002, 1007–08 (4th Cir.1994). Even if Officer Hamilton misunderstood Plaintiff's response to her commands, her actions, as well as those of Officer Clark, were reasonable in light of the fact that Plaintiff

refused to drop his weapon. See Id. As the United States Court of Appeals for the Fourth Circuit noted in Elliott, "the Fourth Amendment does not require omniscience ... Officers need not be absolutely sure ... of the nature of the threat or the suspect's intent to cause harm—the Constitution does not require that certitude precede the act of self protection." Elliott, 99 F.3d at 644.

Several cases decided by the United States Court of Appeals for the Fourth Circuit are instructive in evaluating the reasonableness of the officers' actions in this case. In McLenagan v. Karnes, supra, several persons arrested for driving while intoxicated where being held in a detention area awaiting presentation to a magistrate. Fearing that one of the arrestees may have gained access to a firearm, one of the sheriff's deputies ran into the main hallway of the building, waving her arms in the air and yelling "The man has got a gun." Also perceiving danger, the plaintiff, an arrestee, followed closely behind the deputy with his hands still cuffed in front. The handcuffs constricted the plaintiff's range of motion causing him to run in a crouched position. As they ran down the hallway, the deputy continued to yell, "The man has got a gun." The defendant, a Richmond City Police Officer, turned and drew his weapon. The defendant officer observed Plaintiff approaching him immediately behind the deputy. From his position, the officer could not determine whether or not Plaintiff had a gun in his hand. Officer Karnes shot the plaintiff.

Reversing the trial court, the Fourth Circuit held that Officer Karnes was entitled to qualified immunity on the § 1983 claim against him. Relying upon Tennessee v. Garner, supra, the Court held that Officer Karnes's use of deadly force was not excessive, as he had probable cause to

believe that the plaintiff posed a threat of serious physical harm to him and to other officers. *Garner,* 471 U.S. at 11, 105 S.Ct. 1694.

Three observations by the Court in *McLenagan* are noteworthy in defining the contours of reasonable police action. First, the Court expressed its belief that a suspect's failure to raise his hands in compliance with a police officer's command to do so may support the existence of probable cause to believe the suspect is armed. Second, the Court declined to fashion an inflexible rule that in order to avoid civil liability, an officer must always warn his suspect before firing. Third, the Court in *McLenagan* elected not to require a police officer in all instances to actually detect the presence of an object in a suspect's hand before firing on him. *McLenagan,* 27 F.3d at 1007.

In *Anderson v. Russell,* 247 F.3d 125 (4th Cir.2001) the defendant police officer was approached at a mall by a patron who pointed out the plaintiff as a man who appeared to have a gun under his sweater. The officer spent the next twenty minutes observing the suspect and saw what the officer believed to be a bulge, consistent with a handgun, under the plaintiff's clothing on his left side near his waistband. The officer decided to confront Plaintiff to determine whether he was in fact armed. When Plaintiff exited the mall, the defendant, accompanied by another officer, approached him in the parking lot with his weapon drawn and instructed Plaintiff to raise his hands and get down on his knees. Plaintiff initially complied with the order to raise his hands, but later lowered them without explanation and attempted to reach into his back left pocket. The defendant officer shot Plaintiff three times. Unfortunately, Plaintiff was not armed and was reaching into his rear pocket to turn off his portable radio. *Id.* at 127–29. In affirming the trial court's grant of quali-

fied immunity, the Fourth Circuit stated that "given the uncontroverted evidence as to what Russell perceived immediately before firing, we do not believe that there is a legally sufficient evidentiary basis for a rational jury to find for Anderson on the issue of excessive force." *Id.* at 131.

Even more closely analogous to the immediate case is *Mack v. Reddick,* an unpublished opinion in the Fourth Circuit found at 1995 U.S.App. Lexis 3113, 47 F.3d 1165, 1995 WL 81857 (1995). In *Mack,* the Court separated out those facts in dispute and focused its analysis on the undisputed facts. In the final analysis, the Court found four facts determinative. First, the defendant officer had been summoned to investigate a report that shots were fired at an apartment complex. Second, the officer verified the report with the complex's assistant manager. Third, the officer observed an altercation between two men on the balcony who were belligerent and appeared intoxicated. Last, one of the men was holding a gun. The Fourth Circuit concluded that those undisputed facts provided an objectively reasonable basis for Officer Reddick's use of deadly force. *See id.,* 47 F.3d 1165, 1995 WL 81857, *1, 1995 U.S.App. Lexis 3113, at **6–8.

In the immediate case, the Court is of the opinion that the split-second decision of Officers Hamilton and Clark to use deadly force against Plaintiff was reasonable. Obviously, it is extremely unfortunate that Plaintiff was seriously injured. The officers' use of force however, did not constitute a Fourth Amendment violation under the facts of this case. The defendants are therefore entitled to qualified immunity.

Since the defendant officers' use of force was reasonable under the circumstances, Plaintiff's state law claim for assault and battery also fails as a matter of law. Accordingly, the Defendants' Motion for

Summary Judgment is GRANTED, and the case will be DISMISSED.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.